*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0272P (6th Cir.)
File Name: 00a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        *v.*

MARCUS D. WILLIAMS,
        *Defendant-Appellant.*

No. 98-5058

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
Nos. 97-10015—James D. Todd, District Judge.

Argued: February 3, 1999

Decided and Filed: August 16, 2000

Before: SILER, BATCHELDER, and COLE, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for
Appellant. Richard Leigh Grinalds, ASSISTANT UNITED
STATES ATTORNEY, Jackson, Tennessee, for Appellee.
**ON BRIEF:** Regina C. Stephenson, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for

1

Appellant.  Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

SILER, J., delivered the opinion of the court, in which BATCHELDER, J., joined.  COLE, J. (pp. 7-13), delivered a separate dissenting opinion.

---

**OPINION**

---

SILER, Circuit Judge.  Following his conditional guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), defendant Marcus Williams appeals from the order of the district court denying his motion to suppress evidence.  For the following reasons, we affirm.

I.

Lieutenant Richard Akers, a police officer for the City of Humboldt, Tennessee, began surveillance of a residence at 310 North Fourth Street in Humboldt in 1996.  During the following two months, Akers observed Williams, Keith Cole and Datril Lloyd entering and exiting the house on numerous occasions.  Believing that drug trafficking was occurring on the premises, Akers sent a confidential and previously reliable informant into the residence.  The informant later reported that when he was at the residence he observed Cole, the only person then present, in possession of marijuana and crack cocaine.  Later, Akers discovered that the residence was rented under Cole's name and that the utilities were also in Cole's name.  Based on this information, Akers sought a search warrant for the residence.

The affidavit in support of the search warrant read as follows:

Received information from a confidential and reliable informant, who has given information in the past that has

lead to arrests and convictions that, [sic] he has observed Keith Cole in possession of crack cocaine and marijuana in the residence at 410 [sic] N. 4th Ave. in the past 72 hours. Furthermore, it is this affiant's information that Deteril [sic] Lloyd and Marcus Williams Patterson [sic] also live at this address. It is also known by this affiant that these individuals also sell drugs from this residence.

Akers took the affidavit to a state judge and amplified upon it with testimony under oath before the judge about Akers' knowledge of the subject residence and the activity going on there. The testimony before the state judge was not recorded, but Akers later testified during the motion to suppress that he told the state judge that the police department had the house under surveillance and that they had had numerous phone calls from residents in the neighborhood about the traffic in and out of the residence. He also told the state judge that he had seen Williams, Cole and Lloyd at the house on numerous occasions. The state judge issued the search warrant. It was executed right away. Williams was arrested inside the residence after 24.4 grams of cocaine base and $1900.00 in cash were seized therein.

Williams moved to suppress the evidence from the search on the grounds that the affidavit supporting the search warrant was an insufficient "bare bones" affidavit within the meaning of this court's decision in *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), and, thus, there was no probable cause for the issuance of the warrant. In addition, Williams argued that the warrant was not saved by the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). The district court agreed that the affidavit was similar to that affidavit in *Weaver* and concluded that there was no probable cause for issuance of the warrant. Nevertheless, the court held that Akers acted in good faith and reasonably relied upon the validity of the warrant in executing the search under *Leon*. Therefore, it denied the motion to suppress evidence. Thereafter, Williams entered a conditional guilty plea to the charge of possession with intent to distribute cocaine base and received a sentence of 70 months imprisonment.

## II.

The sole issue presented by this appeal is whether the district court erred by denying the motion to suppress evidence. In reviewing a district court's denial of a suppression motion, this court reviews the factual findings for clear error and the legal conclusions de novo. *See Weaver*, 99 F.3d at 1376.

In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, "including the 'veracity' and 'basis' of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This evidence need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable. *See United States v. Ventresca*, 380 U.S. 102, 108 (1965). This court is also mindful of its rule that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised. *See United States v. Swihart*, 554 F.2d 264, 267-68 (6th Cir. 1977). In determining there was insufficient probable cause for the issuance of the warrant, the district court relied upon the recent *Weaver* decision. Obviously, it did not have the advantage, which we have, of relying upon an even more recent case, *United States v. Allen*, 211 F. 3d 970 (6th Cir. 2000)(en banc), which explained *Weaver*. Based upon the decision in *Allen*, we find that there was probable cause for the issuance of the warrant.

Although the affidavit in *Allen* was longer in verbiage than the one in the case at hand, the most significant difference is that in *Allen*, the name of the informant was disclosed to the judge but not in the affidavit. On the other hand, in this case, the affidavit was amplified by testimony before the local judge. This additional evidence buttressed the informant's

of the law's requirements."). Second, the government asserts that *Leon* saves searches pursuant to defective warrants absent a showing of deceit by the officer or collusion between the officer and the issuing judge and the officer. The government's position is in direct conflict with *Leon* and this circuit's well-established precedent. *See, e.g. Weaver*, 99 F.3d at 1380; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993) (finding *Leon* inapplicable in situation where a reasonably well-trained officer would have known that probable cause did not exist because independent investigation failed to corroborate tip from anonymous informant). A reasonably well-trained officer would have known that Akers's affidavit was insufficient to establish probable cause. The record does not contain evidence that Akers orally informed Judge Jerman of information that would establish probable cause. Therefore, I would conclude that the district court erred in this respect.

## III.

For the foregoing reasons, I respectfully dissent.

The third circumstance applies in this case. An officer does not "manifest objective good faith in relying on a warrant 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (internal citations omitted). On the facts contained in the record, we conclude that a well-trained officer should have known that the search was illegal despite Judge Jerman's authorization. Akers's affidavit is plainly insufficient for the reasons detailed above. Neither the information provided by an unnamed informant -- who may or may not have been familiar with drugs -- that an unspecified amount of narcotics had been in the house three days earlier, nor conclusory allegations of drug dealing devoid of supporting or clarifying details, provide a reasonable basis for a belief that a search will uncover evidence. Akers's testimony at Williams's suppression hearing does not detail what, if any, additional relevant information Akers orally relayed to Judge Jerman. Akers did indicate at the suppression hearing that he told Judge Jerman that the police department had received numerous calls from neighbors regarding traffic in and out of the residence. However, Akers testified that during his surveillance that he observed only the three occupants of the residence go "in and out," hardly a basis for any suspicion of criminal activity at the residence. Again, because the record is barren of information regarding the contents of Akers's testimony before Judge Jerman, we have only the affidavit to consider. We conclude that a reasonably prudent officer should have known that a warrant issued upon such an affidavit was defective and that, therefore, the resulting search was illegal despite Judge Jerman's authorization.

At oral argument, the government attempted to develop two theses. First, emphasizing the "limited education . . . limited training" of the members of the Humboldt, Tennessee, Police Department, the government apparently asked the court to consider the fact that Akers subjectively believed that he had probable cause for the search. As already noted, our inquiry is an objective one. *See Savoca*, 761 F.2d at 295 ("*Leon* indicated that courts evaluating an officer's conduct must charge the officer with a certain minimum level of knowledge

information by showing that the police had received complaints from the neighbors about the traffic around the residence and that the police had seen Williams, Cole and Lloyd in and out of the premises. Even though the affidavit in this case was short, it is more than a "bare bones" affidavit. For example, the informant in this affidavit appears to be more reliable than the one in *Allen*, where the informant had been known by the affiant officer for five years and had given him "information about individuals involved in criminal activity in the past that has proven to be reliable." *Id.* at 971. The affidavit in *Allen* did not say that the information had led to "arrests and convictions," as the affidavit in the case at bar did. Likewise, this informant also appears at least as reliable as the one in *Weaver*, where the informant was listed as "truthful, reliable and credible" and who on previous occasions gave "information of violation of law of the state, which information thereafter was found to have been accurate and reliable." *Weaver*, 99 F.3d at 1375. However, there was no mention in *Weaver* that the informant had provided information which had led to arrests or convictions.

An example of a "bare bones" affidavit is found in *Gates*, 462 U.S. at 239, where the Court, pointing to one from *Nathanson v. United States*, 290 U.S. 41 (1933), said, "A sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." Another illustration was taken from *Aguilar v. Texas*, 378 U.S. 108 (1964), that "[a]n officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate." *Gates*, 462 U.S. at 239. Thus, a "bare bones" affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief that probable cause existed.'" *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993) (quoting *United States v. Ciammitti*, 720 F.2d 927, 932 (6th Cir. 1983)).

*Allen* held "that where a known person, named to the magistrate, to whose reliability an officer attests with some

detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found." *Allen*, 211 F.3d at 976. As mentioned previously, the informant here was not identified. However, the additional information about the police surveillance and the heavy traffic around the residence corroborates the informer's information sufficiently to find probable cause. Therefore, the state judge had probable cause before him to issue the warrant and the seized evidence should not be suppressed.

Because we find that the warrant was issued upon probable cause, we need not decide whether the good-faith exception from *United States v. Leon*, 468 U.S. 897, 905 (1984), applies. However, because the dissent has raised that issue, the inquiry from *Leon* is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922 n.23. Here, it seems that if two judges are of the opinion that the warrant was based upon probable cause, then a well trained officer would have also thought that the search warrant was legal.

AFFIRMED.

affidavit. I will not endeavor to presume the contents of Akers's testimony before Judge Jerman. Thus, I am left only with Akers's affidavit to consider, and as I have already stated it did not present sufficient facts for the district court to determine that probable cause existed.

## II.

The district court found that the affidavit did not provide a sufficient basis for the issuance of the warrant, it nonetheless denied Williams's motion to suppress evidence because it concluded that the "good-faith exception" articulated in *United States v. Leon,* 468 U.S. 897 (1984), applied in this case. I disagree.

In *Leon*, the Supreme Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id* at 905. In making this determination, an officer's subjective beliefs are irrelevant. This court's inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23; *see also United States v. Savoca*, 761 F.2d 292, 295-96 (6th Cir. 1985). The *Leon* Court noted four paradigmatic circumstances in which an officer may not rely on a magistrate's issuance of a warrant: (1) when the issuing magistrate was misled by information in the affidavit that the affiant knew to be false or would have known to be false but for the affiant's reckless disregard for the truth; (2) when the issuing magistrate wholly abandoned his neutral and detached judicial role in the warrant process and became a rubber stamp for the police; (3) when the warrant was based on an affidavit that does not provide the magistrate with a "substantial basis" for determining the existence of probable cause; or (4) when the warrant was facially deficient in that it failed to particularize the place to be searched or the items to be seized. *See id.* 914-15; 923.

orally conveyed to Judge Jerman regarding Akers's independent investigation, this court could conclude that probable cause existed in this case. Oral testimony may supplement a search warrant affidavit. *See United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992). "The Fourth Amendment requires that the probable cause basis for a search warrant be given by 'oath or affirmation' before a judicial officer." *Id.* The record before us, however, provides virtually no indication of what Akers said to Judge Jerman. At the suppression hearing, Akers testified:

> Okay, Judge Jerman read our search warrant. He then placed me under oath and began to ask different questions about my knowledge of the residence at 310 North Fourth and the activity going on there. At that time, I explained to Judge Jerman that we had had the house under surveillance, that we had had numerous phone calls from residents in the neighborhood . . . and that the informant that had given me this information was a reliable informant because we had used him in the past, and they had all led to arrests and convictions.

There is no indication in the record that Akers informed Judge Jerman of what, if anything, Akers's surveillance of the residence revealed.[1] Furthermore, there is no indication in the record that Akers informed Judge Jerman of specific details that the informant may have provided — the amount of drugs allegedly in the house, the exact location of the drugs within the house, the amount of traffic from suspected drug customers, the existence of drug-dealing paraphernalia, etc. — that could have given an air of reliability to Akers's

---

[1] It is, in fact, unclear whether Akers's independent investigation revealed anything. Akers stated at the suppression hearing that "[w]e had done surveillance on [310 North Fourth St.]. We had seen Mr. Williams and two other subjects going in and out of this residence on numerous occasions." Akers later testified that the "two other subjects" were Cole and Lloyd. He did not provide any other details revealed by the investigation. I need not belabor the point that evidence indicating that residents enter and leave their own home does not provide probable cause to search it.

---

## DISSENT

---

R. GUY COLE, JR., Circuit Judge, dissenting. The Fourth Amendment, which mandates that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation," shields individuals from arbitrary searches by government agents. U.S. CONST. Amend. XIV. The amendment's protection of personal privacy and property require that a determination of probable cause issue only upon "the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (citing *Johnson v. United States*, 333 U.S. 10, 14 (1948)). Thus, in order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate can conclude from the totality of the circumstances, "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This evidence need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable. *See United States v. Ventresca*, 380 U.S. 102, 108 (1965). It is critical, however, that "from whatever the source, the information presented must be sufficient to allow the [judicial] official to independently determine probable cause; 'his action cannot be a mere ratification of the bare conclusions of others.'" *Weaver*, 99 F.3d at 1377 (citing *Gates*, 462 U.S. at 239).

There are two often-applied factors critical to our determination of whether a police officer's affidavit based on a confidential informant's ("CI") statement provides a substantial basis for a finding of probable cause: 1) whether

the affidavit contains an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand; and 2) whether the police have corroborated the informant's tip with independent investigative work. *See United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir. 1994) (citing *Gates,* 462 U.S. at 234). However, neither of these prongs are definitive requirements; rather, the totality of the circumstances controls. *See United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (en banc). Indeed, *Allen* stands for the proposition that the existence of probable cause must be determined from the totality of the circumstances specific to each case, such that an affidavit must provide "sufficient facts from which the magistrate could draw an independent conclusion as to the probability (certainty is *not* required) of what it alleged a search would disclose." *Id.* A careful consideration of the totality of the factors in this case indicates to me that the issuing judge could not make such a determination and, therefore, probable cause did not exist for the issuance of a search warrant. I respectfully dissent.

## I.

Akers's one-page affidavit contains two allegations of wrongdoing. In one, it states that "it is . . . known by this affiant that [Marcus Williams and Datril Lloyd] sell drugs from this residence." This clearly does not establish probable cause to search the residence. An affidavit does not provide a sufficient basis for a judicial officer to believe that there was a fair probability that drugs would be found when it merely sets forth the officer's suspicions and beliefs without adequate supporting facts. *See Allen,* 211 F.3d at 975-76; *Weaver,* 99 F.3d at 1377. Indeed, the Supreme Court used a very similar statement to illustrate "the limits beyond which a magistrate may not venture in issuing a warrant." *Gates,* 462 U.S. at 239. "An officer's statement that affiants have received reliable information from a credible person and do believe that heroin is stored in a home, is . . . inadequate. [T]his is a mere conclusory statement that gives the magistrate virtually

no basis at all for making a judgment regarding probable cause." *Id.* (internal citations omitted).

The affidavit also alleges that Akers had "[r]eceived information from a confidential and reliable informant, who has given information in the past that has led to arrests and convictions that, [sic] he has observed Keith Cole in possession crack cocaine and marijuana in the residence at 410 [sic] N. 4th Ave. in the past 72 hours." In *Allen,* we held that an affidavit provided probable cause for the issuance of a search warrant based upon the facts that: the affiant – who had been a narcotics officer for fifteen years – had personally known the CI for five years; the CI had provided reliable information in the past; and the CI personally observed the alleged criminal activity. *See* 211 F.3d at 975, 976. We thus distinguished the case from *Weaver,* in which we concluded that an affidavit did not provide probable cause because the affidavit's "combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity." 99 F.3d at 1379. Contrary to the majority's assertion, the affidavit in the present case is closer to the affidavit in *Weaver,* rather than the affidavit in *Allen.* Here, the boilerplate affidavit contained little additional information, and the additional information that was set forth was brief, perfunctory, and totally lacking in detail. Without details indicating either the identity of the CI, the relationship between the CI and the affiant, the kind of cases for which the CI had provided information in the past, the CI's experience in identifying drugs, or the amounts of drugs observed, I cannot conclude that under the totality of the circumstances, the affidavit established the likelihood that narcotics would be found on the premises. Accordingly, I agree with the district court that the affidavit failed to supported a finding of probable cause.

The government, in fact, conceded as much at oral argument. There, the government took the position, however, that considering the information that Akers, while under oath,