**NOT FOR FULL-TEXT PUBLICATION**
File Name: 09a0321n.06
Filed: May 6, 2009

**No. 08-3304**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

       **Plaintiff-Appellee,**

                               **ON APPEAL FROM THE**

v.                                **UNITED STATES DISTRICT**

                                **COURT FOR THE SOUTHERN**

JOSHUA MCNALLY,              **DISTRICT OF OHIO**

       **Defendant-Appellant.**

_____/

**BEFORE:**    **MARTIN, SUHRHEINRICH and WHITE; Circuit Judges.**

     **SUHRHEINRICH, Circuit Judge.**   Defendant Joshua McNally appeals the judgment of

the district court following his conviction of one count of knowingly possessing material containing

images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Defendant entered a

conditional plea of guilty, reserving his right to challenge the district court's denial of his

suppression motion. We **AFFIRM.**

### I. Background

     On March 29, 2004, Megan Wood went to the local office of the Federal Bureau of

Investigation and reported that she thought Defendant was involved with child pornography. Wood

told FBI agent Jeffrey Coburn that she had lived with and dated Defendant for approximately six

months.  They lived at 2300 San Rae Drive, Apartment A, in Kettering, Ohio.  They ended their relationship in February 2004, violently, with protection orders against each other.

Wood told Coburn that she had found child pornography in the residence and at Defendant's studio.  Defendant worked for Lifetouch Photography and took photographs of preschool children.  He also had a photography studio located at 915 Keowee Street, Dayton, Ohio.  Wood said that she found a directory on Defendant's computer entitled "child kiddie" but that she was not able to access the file because it was electronically locked.  Wood stated that Defendant spent about $200 a month on pornography subscriptions, and that he had such magazines throughout the house.  She had found numerous photographs of multiple underage females posing in sexual situations, including fondling each other's breasts and genitals.  Wood recalled a box delivered to the house that contained a photograph of a young nude female and a pair of women's underwear.  Wood also stated that there were pornographic videos in the house, but Coburn could not remember if she said they involved minors.

Wood reported that McNally possessed voyeur videos and Japanese animated pornographic videos.  During their sexual encounters, Defendant would ask her to wear school-age outfits that he had purchased for her.

This information, along with his training and background in cyber crime investigations, including child pornography, led Coburn to seek a federal search warrant for McNally's studio and residence.  On April 6, 2004, FBI agents executed the two search warrants, uncovering evidence of child pornography at Defendant's residence but not his studio.  No "child kiddie" file was found on Defendant's computer.

Defendant filed a motion to suppress this evidence, alleging that Coburn deliberately included false information in the affidavit and requested a *Franks* [*Franks v. Delaware*, 438 U.S. 154 (1978)] hearing. Specifically, Defendant challenged the statement that he "strangled and struck the complainant [Wood]." JA 205-06. Defendant claimed that this information undermined the finding of probable cause.

The district court conducted a *Franks* hearing. Coburn testified for the United States. He stated that, based upon Woods's claim, he did a NCIC check on both McNally and Wood and verified that temporary protection orders had been issued against both individuals. Coburn stated that he typically checked the criminal records provided of witnesses. On redirect he stated that once he confirmed the fact of the protection orders, he was not interested in the details because it was not relevant to his investigation. However, Coburn stated that he was a "little bit" concerned because their breakup was not amicable and resulted in joint protection orders; he nonetheless considered Wood credible.

Defendant called Officer Tobias of the Kettering Police Department. Tobias responded to a domestic violence call at the San Rae apartment in February 2004. Tobias testified that he did not observe any injuries on Ms. Wood that night, and he did not make any arrests.

The district court ruled that Wood's statement about being strangled was false. The district court found no *Franks* violation, however, because the inclusion of the statement in the affidavit was not a deliberate falsehood or a reckless disregard for the truth. The court further found that even if the statement was excluded, there was still sufficient probable cause to justify the search of Defendant's residence.

Thereafter, Defendant pleaded guilty to one count of possessing material containing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). The written plea agreement reserved his right to appeal the denial of the motion to suppress. The district court sentenced Defendant to a term of probation not to exceed three years, the first six months to be served on home confinement, to register as a sex offender with a state registration agency, and to have no personal contact with children under the age of 18. The judgment of conviction was entered on February 20, 2008, and this timely appeal follows.

## II. Analysis

In reviewing the district court's denial of a motion to suppress, we review its factual findings for clear error and its legal conclusion as to the existence of probable cause de novo. *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005). The district court's determination that an affidavit provided sufficient probable cause to support issuance of a search warrant its entitled to "great deference." *Id.*

## A. Probable Cause

Defendant contends the affidavit failed to establish probable cause to search his residence because the complainant is never identified or disclosed to the magistrate, and there is no independent corroboration.

The principles governing this issue were recently summarized in *United States v. Smith*:

> A warrant will be upheld if the affidavit provides a "substantial basis" for the issuing magistrate to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000). The Supreme Court has adopted a "totality of the circumstances" approach to reviewing the sufficiency of an affidavit underlying a search warrant. *Allen*, 211 F.3d at 972 (citing *Gates*, 462 U.S. at 230-32, 103 S. Ct. 2317). Under this

approach, an issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information," there is probable cause. *King*, 227 F.3d at 740 (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317). An officer may rely upon information obtained from a confidential informant "so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000).

In determining whether there was sufficient probable cause to support the search warrant, *United States v. Allen* is particularly instructive. In *Allen*, this court, sitting en banc, sought to clarify Sixth Circuit law "regarding the necessary requirements for the issuance of a search warrant based on uncorroborated information from an informant." 211 F.3d at 973 (quotation marks and citation omitted). The court noted that there is no general proposition "that a CI's information must always be independently corroborated by police, or that an affidavit must in every case set out and justify a CI's expertise in identifying the particularities of the criminal activity alleged." *Id.* at 974. The court explained that an affidavit should be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Id*. at 975.

*United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007).

Here, although the affidavit did not identify the informant, it contained ample additional information to provide probable cause. As the district court found:

[T]his affidavit established probable cause to believe that child pornography would be found in Defendant's apartment. Therein, Coburn set forth what the informant had told him, to wit: that she and the Defendant had been romantically involved for a period of six months; that their relationship had ended the preceding February; that she had spent a lot of time at his apartment during their relationship; that the Defendant had a large collection of pornography; that the informant had seen an electronic file folder on Defendant's computer, in his pornography folder, entitled "child kiddie;" that the "child kiddie" file folder was the only one on his computer which the informant found to be locked; that in his bedroom she had observed a picture of a nude, young girl, who appeared to be a minor; that she had seen numerous other pictures of teenage girls posing in the nude and in sexual situations; that the Defendant had animated videos which featured young girls in their middle school years; and that, during their relationship, he had purchased a number of "school girl outfits," which he wanted the informant to wear.

The magistrate judge's determination is entitled to deference here. The informant acquired the information firsthand based on her personal relationship with Defendant and provided substantial and credible detail. Moreover, Coburn independently confirmed the following information Wood provided: (1) via public records that McNally resided at 2300 San Rae Drive, Apartment A, and that the studio was located at 915 Keowee, (2) McNally's employment at Lifetouch Studios, and (3) joint protection orders on both Defendant and Woods via NCIC. As this Court observed in *United States v. Tuttle*, 200 F.3d 892 (6th Cir. 2000), "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information." *Id.* at 894. Under the "totality of the circumstances" based on the contents of the affidavit, there was probable cause to believe that evidence of a crime would be found at Defendant's residence and studio.

Even if Defendant could demonstrate that the affidavit lacked probable cause, the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984), would apply, because this affidavit is not "so lacking in indicia of probable cause as to render official belief in it as entirely unreasonable." *Id.* at 923 (internal quotation marks and citation omitted).

**B. False Statements**

In reviewing a *Franks* challenge, we review de novo the district court's legal conclusions and its factual findings for clear error. *United States v. Keszthelyi*, 308 F.3d 557, 566 (6th Cir. 2002).

In *Franks*, the Supreme Court held that a search warrant "must be voided" if, after a hearing, the defendant establishes by a preponderance of the evidence (1) that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

affidavit," and (2) that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 155-56.

Paragraph 14 of the affidavit stated that the informant's relationship with Defendant terminated in February 2004 when "McNally strangled and struck complainant." Defendant argues that Coburn's inclusion of that statement amounted to an intentional falsehood or reckless disregard for its truthfulness. Defendant contends that Coburn should have contacted the Kettering, Ohio Police Department, the agency which conducted the underlying investigation, to corroborate Wood's allegation. As noted, the district court found this statement false.

Notwithstanding the court's finding, Coburn's reliance on Wood was not reckless. Coburn personally interviewed Wood at the FBI office and deemed her credible. She was accompanied by her aunt, who confirmed the volatile nature of Defendant's and Wood's relationship. In addition, Coburn confirmed the existence of the protection orders, and further confirmed other details, as noted above. Instead, as the district court held, Coburn was at most "negligent," and there was "no evidence that Coburn had even an inkling that his informant had been untruthful when he executed his affidavit." Thus, "the failure to conduct a more thorough investigation did not manifest a reckless disregard for the truth." And, as the district court further noted, suppression would not have been warranted in any event since the excision of the statement did not affect the probable cause determination. Rather, the statement "significantly increased the risk that [the magistrate judge] would not find that probable cause existed, because the statements that Defendant had strangled and struck the person who had supplied most of the information in that affidavit showed that revenge could have motivated her to lie." In short, there was no error under *Franks*.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**