ROGERS, Circuit Judge, dissenting.
Based on a five-page-long search-warrant affidavit-which included evidence from a confidential informant and other sources, a controlled buy, and direct police-officer surveillance-a neutral and detached magistrate determined that there was probable cause to search 618 Grandville Avenue, Tyrone Christian's home, for evidence of drug trafficking. That search uncovered a large amount of heroin, some cocaine, and two loaded guns. Christian argues on appeal that the search was not supported by probable cause because each *872 piece of evidence assertedly could not have independently authorized the search. However, reading each piece of evidence in that way-alone and in the most uncharitable light possible-distorts the narrow scope of our review prescribed by Illinois v. Gates , 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Such a hyper-technical, line-by-line scrutiny of each factual allegation patently violates the common-sense, totality-of-the-circumstances approach to probable cause that multiple precedents compel us to apply. Earlier this year the Supreme Court cautioned that "this kind of divide-and-conquer approach" has no place in our law. District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018). To suppress the evidence seized in reliance on the robust warrant here is to ignore that clear admonition.
The search-warrant affidavit at issue here provided an ample basis for probable cause, and the question is really not even close. The affidavit first outlined Christian's extensive history with drugs, which included four felony drug convictions from 1996, 2002, 2009, and 2011, at least two of which were for drug trafficking. In 2009 and 2011, search warrants executed at Christian's home, 618 Grandville, the same place searched here, uncovered evidence of drug trafficking that each time resulted in Christian's arrest.
The affidavit next detailed the reasons why officers believed that Christian had gone back into business. In December 2014, a "credible and reliable informant" advised Officer Bush, the affiant, that Christian was again dealing drugs. The informant also provided information about other traffickers, including "names, nicknames, phone numbers, residences utilized by the drug traffickers and information regarding specific drug transactions." Officer Bush independently corroborated "much of the information provided" by this informant. In January 2015, under the direction of Officer Bush, the informant executed a controlled purchase of drugs from Christian. In addition, "[w]ithin the last four months" from the date of the search, meaning from May to September of 2015, several other informants stated that "Tyrone Christian is a large scale drug dealer" and that "they [had] purchased large quantities of heroin and crack cocaine from Christian at [his residence] in the last four to five months."
That brings us to September 3, 2015, the day of the search, when, according to the affidavit, officers established surveillance "at 618 Grandville Avenue." The officers observed Reuben Thomas "walk away from the area of 618 Grandville Avenue and leave the area in a vehicle." After stopping him for a traffic violation, officers found "approximately 20 grams of heroin" in the form of " 'chunk[s]' that appeared to have been removed from a larger portion of heroin." Thomas denied having been at 618 Grandville but admitted having been at another address on that street. Crucially, the affidavit recounted that Thomas's denial was "contrary to the observations of the law enforcement officers."
Viewing the "totality of the circumstances," Florida v. Harris , 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013), through the "lens of common sense," as the Supreme Court has instructed, id. at 248, 133 S.Ct. 1050, the conclusion is inescapable: there was probable cause to believe that a search of 618 Grandville would uncover evidence of drug trafficking. Most readers of the affidavit would have been surprised if it did not.
Indeed, one element of the affidavit was independently sufficient for probable cause: the surveillance of Reuben Thomas. Christian argues that there was no "nexus" between Thomas and 618 Grandville *873 because the affidavit states merely that officers saw Thomas "walk away from the area of 618 Grandville Avenue," rather than entering or leaving that residence. But that selective, out-of-context reading is contradicted even by other parts of the affidavit, which later states that "Reuben Thomas ... denied being at [the Residence], contrary to the observations of the law enforcement officers ." (Emphasis added.) While this is not a direct statement that Thomas was seen entering or leaving 618 Grandville, the law does not require such a direct statement. Indeed, our precedents require us to eschew such a formal requirement. "Affidavits are not required to use magic words." United States v. Allen , 211 F.3d 970, 975 (6th Cir. 2000) (en banc). Because our job is not to reweigh the assertions in an affidavit but to ask whether the magistrate had a substantial basis for his conclusion, United States v. Perry , 864 F.3d 412, 415 (6th Cir. 2017), the latter phrase in the affidavit cannot be read out of existence. Rather, the deferential nature of our review means that we should take that latter statement-i.e., that Thomas's denying that he was at 618 Grandville was "contrary to the observations of the law enforcement officers"-to reconcile any doubt about where the officers saw Thomas walk away from.
Under that proper view of the affidavit, and paying the appropriate "great deference" to the magistrate's probable-cause determination, Gates , 462 U.S. at 236, 103 S.Ct. 2317, the surveillance evidence provided a substantial basis for concluding that probable cause existed. Argument to the contrary is unavailing. Any possible contradiction between "from the area of" and "contrary to the observations of the officers" is more readily attributable to the "haste of a criminal investigation" under which officers often draft an affidavit supporting a search warrant. See id. at 235, 103 S.Ct. 2317. Such haste was certainly present here: Officer Bush applied for and received the warrant on the same day as the purportedly infirm surveillance and search. To boot, police officers are mostly non-lawyers who must draft search-warrant affidavits "on the basis of nontechnical, common-sense judgments." Id. at 235-36, 103 S.Ct. 2317. With the benefit of hindsight, perhaps the affiant could have been more precise. But our precedents do not require such an exacting degree of specificity. For example, in our recent published opinion in United States v. Tagg , 886 F.3d 579 (6th Cir. 2018), we held that probable cause existed to search the defendant's home for child pornography despite the supporting documents' failure to state that the defendant had actually clicked on or viewed an online file containing child pornography. Id. at 585-90. In doing so, we explained that probable cause is not the same thing as proof. See id. at 589-90. Likewise, the affidavit here need not have definitively stated that Thomas was seen leaving 618 Grandville. Rather, it need only have "alleged facts that create a reasonable probability" that he did. See id. From there, the remaining inferences needed to connect 618 Grandville to Christian's drug trafficking are quite straightforward, given Christian's history of dealing drugs from that address and the officers' finding heroin on Thomas. Under a common-sense reading of the affidavit, then, its description of the 618 Grandville surveillance easily exceeds the "degree of suspicion," id. at 586, needed to establish probable cause.
Moreover, the officers who saw Thomas were assigned to "establish[ ] [surveillance] at 618 Grandville Avenue," not the entire area around it. Assuming those officers were doing their jobs, the fact that they saw Thomas at all probably means that he was very near 618 Grandville. At the very least, that would be far from an arbitrary *874 inference for a magistrate to draw. In addition, the heroin found on Thomas appeared to "have been removed from a larger portion of heroin." These facts further supported the magistrate's determination that there was probable cause to believe that evidence of drug dealing would be found at 618 Grandville.
The affidavit hardly relies alone on the Thomas surveillance, however. There is also Christian's lengthy history of dealing drugs from 618 Grandville, the controlled purchase from 618 Grandville, and the numerous tips that Christian was dealing large quantities of drugs from 618 Grandville, all of which provide further evidence still that probable cause existed. When it comes to probable cause, "the whole is often greater than the sum of its parts-especially when the parts are viewed in isolation." Wesby , 138 S.Ct. at 588 (citing United States v. Arvizu , 534 U.S. 266, 277-278, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ). Even if each of these additional items would not suffice to establish probable cause on its own, each factual allegation is still a relevant data point in the "totality of the circumstances" constellation, rather than an independent thing to be lined up and shot down one by one. As in Wesby , where the Supreme Court firmly repudiated the Court of Appeals' attempt to isolate and explain away each piece of evidence, here too "the totality of the circumstances gave the officers plenty of reasons," 138 S.Ct. at 589, to believe that there was evidence of drug trafficking in Christian's home.
Probable cause therefore existed, and it is not a close call. The opposite conclusion can be reached only by engaging in the kind of "hypertechnical[,] ... line-by-line scrutiny," United States v. Woosley , 361 F.3d 924, 926 (6th Cir. 2004), of the affidavit explicitly forbidden by the Supreme Court, see Gates , 462 U.S. at 236, 246 n.14, 103 S.Ct. 2317. In Wesby , the Court explained that "this kind of divide-and-conquer approach is improper," because "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." 138 S.Ct. at 589 (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ). That is the case here too, where alone some parts of the affidavit might be criticized but taken together they point clearly to one conclusion: that Christian was dealing drugs from 618 Grandville.
We are accordingly compelled to hold that there was probable cause in this case, especially given the undemanding character of the probable-cause standard and the deferential nature of our review. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Tagg , 886 F.3d at 585 (quoting Wesby , 138 S.Ct. at 586 ). Time and again the Supreme Court has emphasized that "[p]robable cause 'is not a high bar' " to clear. Wesby , 138 S.Ct. at 586 (quoting Kaley v. United States , 571 U.S. 320, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014) ). Where, as here, a magistrate has issued a search warrant based on probable cause, we "do[ ] not write on a blank slate." Tagg , 886 F.3d at 586. Rather, the magistrate's probable-cause determination "should be paid great deference," Gates , 462 U.S. at 236, 103 S.Ct. 2317 (internal quotation marks omitted) (citing Spinelli v. United States , 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ), and we overturn that decision only "if the magistrate arbitrarily exercised his or her authority," United States v. Brown , 732 F.3d 569, 573 (6th Cir. 2013) (citing United States v. Greene , 250 F.3d 471, 478 (6th Cir. 2001) ). We are "not permitted to attempt a de novo review of probable cause." Tagg , 886 F.3d at 586 (citing Gates , 462 U.S. at 238-39, 103 S.Ct. 2317 ;
*875 United States v. King , 227 F.3d 732, 739 (6th Cir. 2000) ).
The conclusion that probable cause existed to search Christian's home is compelled, moreover, by our recent published decision in United States v. Hines , 885 F.3d 919 (6th Cir. 2018), in which we emphasized the importance of the totality-of-the-circumstances approach: "Not all search warrant affidavits include the same ingredients," we said before recognizing that "[i]t is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed." Id. at 921-22. The affidavit at issue in Hines , like the one here, was substantial. Both included, among other things, recent evidence of drug-related activity: there, a confidential informant's statement that one day earlier he had seen drugs at the subsequently searched home; here, the officers' finding heroin on Thomas after having observed his leaving 618 Grandville. But the takeaway from Hines most salient here is methodological, not analogical: Hines requires us to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain or the flaws of each individual component of the affidavit. Doing the former establishes probable cause here. Rejecting probable cause on the affidavit in this case therefore flies in the face of Hines , a well-reasoned precedential decision.
Because the affidavit contained more than enough to establish probable cause, it follows as a matter of logic that, at the very least, Christian's suppression motion was properly denied because of the good-faith exception of United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under Leon , the exclusionary rule does not bar from admission "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905, 104 S.Ct. 3405. If somehow the affidavit at issue here could be deemed insufficient to establish probable cause, then this is a case in the very heartland of the Leon exception. Contrary to Christian's argument, the affidavit was not "bare bones." We reserve that label for an affidavit that "merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Washington , 380 F.3d 236, 241 n.4 (6th Cir. 2004) (internal quotation omitted). To further describe the bare-bones standard is to show why it does not apply here. We have said that, to be considered bare bones, an affidavit must be "so lacking in indicia of probable cause" as to make an officer's "belief in its existence ... objectively unreasonable." United States v. Laughton , 409 F.3d 744, 748 (6th Cir. 2005). In United States v. Williams , 224 F.3d 530 (6th Cir. 2000), we described how woefully deficient an affidavit must be before it meets this standard:
An example of a "bare bones" affidavit is found in Gates , 462 U.S. at 239 [103 S.Ct. 2317], where the Court, pointing to one from Nathanson v. United States , 290 U.S. 41 [54 S.Ct. 11, 78 L.Ed. 159] (1933), said, "A sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." Another illustration was taken from Aguilar v. Texas , 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964), that "[a]n officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate." Gates , 462 U.S. at 239 [103 S.Ct. 2317]. Thus, a "bare bones" affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief *876 that probable cause existed.' " United States v. Finch , 998 F.2d 349, 353 (6th Cir. 1993) (quoting United States v. Ciammitti , 720 F.2d 927, 932 (6th Cir. 1983) ).
Williams , 224 F.3d at 533.
Although one can split hairs about the affidavit in this case, it is impossible to deny that it contains factual allegations, not just beliefs or conclusions. Each factual allegation, regardless of any infirmities, at least purports to link Christian to drug trafficking at 618 Grandville. An affidavit need only present "some connection, regardless of how remote it may have been," United States v. White , 874 F.3d 490, 497 (6th Cir. 2017), or, in other words, establish a "minimally sufficient nexus between the illegal activity and the place to be searched," United States v. Brown , 828 F.3d 375, 385 (6th Cir. 2016), to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith. Because the affidavit here established probable cause, it also necessarily satisfies this lower requirement. To hold otherwise is to equate the five-page, extensively sourced affidavit here with the short, conclusory, and self-serving ones for which the bare-bones designation has been, and ought to be, reserved.
Our decision in United States v. Hython , 443 F.3d 480 (6th Cir. 2006), is almost completely inapposite here. We held there that the affidavit-which recounted only a single, undated controlled purchase-did not satisfy the good-faith exception. Id. at 486, 488-89. Although the affidavit linking 618 Grandville to drug dealing did include information about an arguably stale controlled purchase, the similarities between this case and Hython end there. Indeed, this case is like Hython only if, engaging in the methodological error forbidden by the Supreme Court in Wesby , one completely ignores most of the affidavit by discounting each item one by one. Indeed, Hython by negative inference supports the existence of good-faith reliance here by showing just how unsubstantiated an affidavit must be to fail to qualify under Leon 's good-faith exception.
This is a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing. The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon , 468 U.S. at 916, 104 S.Ct. 3405. As the Supreme Court explained in Leon , "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S.Ct. 3405. This balance supports the principle that, as we said in United States v. Carpenter , 360 F.3d 591 (6th Cir. 2004) (en banc), the good-faith exception requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." Id. at 595-96 (quoting United States v. Bynum , 293 F.3d 192, 195 (4th Cir. 2002) (citation omitted) ). Refusing to adhere to those decisions in a case like Christian's unduly exalts the Fourth Amendment interest marginally served by deterring nonculpable conduct over the public interest in combatting crime-and amounts to effective disregard of Supreme Court precedent as well as our own.
Finally, it is questionable to conclude that the district court erred by admitting the challenged telephone-call evidence. In any event, any such error was harmless, given that, as explained above, the evidence obtained in accordance with the search warrant was properly admitted. Because suppression was correctly denied, the jury properly heard, for example, evidence that officers found 70 grams of heroin *877 next to two loaded guns in Christian's basement and cocaine in another part of the house, that the DNA found on one of the guns matched Christian's, and that Christian's cell phone contained text messages about drug trafficking. Considering that evidence, the phone call added relatively little: it connected Thomas and Christian, which provided a basis for the jury to conclude that Christian had sold drugs to Thomas, and it linked Christian to a third gun. But even had that evidence not been admitted, no jury could have acquitted Christian on these charges. The evidence against him was too damning. Admitting the phone-call statements was therefore harmless.
The judgment of the district court should be affirmed.