GRIFFIN, J., delivered the opinion of the court in which GILMAN, J., joined. STRANCH, J. (pp. 507-16), delivered a separate dissenting opinion. OPINION GRIFFIN, Circuit Judge. After a narcotics officer watched defendant Albert White sell marijuana to an undercover informant in the driveway of White’s home, the officer sought a search warrant for the residence. His affidavit recounted the recent drug deal, a confidential tip. that .White was selling marijuana from--the residence, defendant’s previous drug offenses, and. the fact that defendant keeps pit bulls “at his residence.” Defendant argues that' this information is so lacking in indicia of probable cause that no reasonable officer would believe there was probable causé to search his home. We disagree and affirm his convictions and sentences... I. . In October 2013, narcotics investigator-Brandon Williams • received information from a confidential source that Albert White was selling marijuana from 196 Turner Lane in Covington, Tennessee. Williams enlisted the confidential source to execute a “controlled buy” from White. Equipped with a recording device and $260 hi buy money, the confidential source met White in the driveway'of 196 Turner Lane. When he arrived, defendant was already sitting in his white truck, where the'confidential source joined him to consummate the deal. Following the exchange,, defendant drove off and the confidential source rendezvoused,, with Williams, who was staked out nearby monitoring the transaction. After reviewing the footage and conducting some additional investigation, Williams prepared an affidavit in support of a search warrant for 196 Turner Lane. In addition to recounting Williams’ law-enforcement and narcotics-investigation experience, the affidavit stated: Investigator Brandon Williams received information that marijuana was being sold from 196 Turner Lane in Coving-ton, TN 38019 in Tipton County, TN by a black male identified as Albert Dajuan White. Investigator Brandon Williams initiated a controlled purchase of raari- ■ juana with the use of a confidential source from the residence. Investigator Brandon Williams placed audio and video on the confidential source. The confidential source then proceeded to 196 Turner Lane in Covington, TN[,] Tipton County, TN., Investigator Brandon Williams observed .the confidential source pull into the driveway of 196 Turner Lane in Covington, TN 38019 in Tipton County, TN and pull up next to a white Chevrolet truck where Albert White gave the confidential source the marijuana for the previously recorded drug fund money. Investigator Brandon Williams then observed the white Chevrolet truck leave the residence with Albert White driving the vehicle. The confidential source then left the residence and met with Investigators where the marijuana was recovered. ’ The transaction was captured on an audio and video device. This incident occurred in Tipton County, TN. in the last seventy-two hours. A sudden and forceful entry is clearly necessary for the safety of Deputies, residents, or other nearby persons or property due' to Albert Dajuan White’s extensive criminal history consisting of Evading Arrest, Resisting arrest,.and numerous possessions of SCH II and VI. Albert is also known to have dogs believed to [be] pit bulls at his residence. Persuaded that the foregoing was sufficient to establish probable cause, a local state court judge issued a search warrant. The ensuing search uncovered over a pound of marijuana, a firearm, ammunition, and roughly $32,000 in cash, some of which was traced to the controlled buy. White,was indicted on drug and firearm-possession charges and moved to suppress the evidence seized from his residence, arguing , that the affidavit failed to establish probable cause to believe that contraband would be found there. No reasonable officer would have believed otherwise, defendant also contended, because “the affidavit is so facially defective given that no time or date is stated as to when the alleged criminal activity took place.” A magistrate judge issued a report, recommending that the district court deny the motion because the affidavit established probable cause and, in any event, it was not so lacking in that department that the good-faith exception would apply. The district court agreed with defendant that the affidavit failed to establish probable cause. However, noting defendant’s failure to object to the magistrate’s good-faith ruling, the district court held that the magistrate judge’s good-faith .analysis was sound and denied the motion. Defendant proceeded to trial, where a jury found him guilty of being a felon in possession of a firearm and felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 33 months in prison, concurrent with an on-going state sentence for the violation of his probation. Defendant’s appeal presents two issues: first, whether the district court erred in denying his motion to suppress, and second, whether the district court committed plain error in failing to specify the “start date” for his federal sentence or adjusting it under U.S.S.G. § 5G1.3(b). ' n. In the motion-to-suppress context, this court reviews the district court’s factual findings for clear error and its legal conclusions de novo. United States v. Washington, 380 F.3d 236, 240 (6th Cir. 2004). Typically, this cdurt reviews only those issues adequately preserved for appeal. When a party neglects to advance a particular issue in the lower court, or fails to lodge a specific objection to a particular aspect of a magistrate judge’s report and recommendation, we-consider'that issue forfeited on appeal. United States v. Archibald, 589 F.3d 289, 295-96 (6th Cir. 2009); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). Both types of forfeiture could apply in this case. In the district court, defendant neglected to make the assertions of lack of good-faith he advances on appeal, and, perhaps more fatally, he failed to object to the magistrate’s good-faith analysis, something both the government and the district court noted below. Nevertheless, our forfeiture rule is not inflexible. Like other procedural rules, it too is susceptible to abandonment, see Washington, 380 F.3d at 240 n.3, and for whatever reason, the government has decided not to pursue this forfeiture issue on appeal.- Loath to raise’issues for the parties, much less resolve cases -on them, we therefore proceed to the merits. Cf. DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006) (“Our function is to review the case presented to the district court, rather than a better case fashioned after a district court’s unfavorable order.”). III. Defendant argues that'the district court erred in denying his motion to suppress. Though it correctly held that the affidavit lacked probable cause, he’claims that the district court erred in ruling that the good-faith exception applied. The government does not challenge the district court’s probable-cause ruling, arguing instead that the affidavit plainly qualifies for the good-faith exception. We therefore ‘ proceed to the good-faith inquiry, assuming, without deciding, that the affidavit failed to establish probable cause. A. In United States v. Leon, the Supreme Court created an exception to the exclusionary rule for evidence “seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.” 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In a break from - the previously reflexive and uncompromising approach of excluding all evidence seized without probable cause, the Supreme Court established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding “inherently trustworthy tangible evidence” from the jury’s consideration. Id. at 907, 104 S.Ct. 3405. Following Leon, courts presented with a motion to suppress claiming a lack of probable cause must ask “whether a reasonably well trained officer would have known that the search was illegal despite the magistrate’s decision.” United States v. Hodson, 543 F.3d 286, 293 (6th Cir. 2008) (quoting Leon, 468 U.S. at 923 n.23, 104 S.Ct. 3405). Only when the answer is “yes” is suppression appropriate. To aid courts in resolving this question, Leon outlined four circumstances in which an officer’s reliance would not be objectively reasonable. Leon, 468 U.S. at 914-15, 923, 104 S.Ct. 3405. We deal here with the third scenario: when the affidavit is “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Id. at 923, 104 S.Ct. 3405 (quoting Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).[1] An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a “bare bones” affidavit. See United States v. Weaver, 99 F.3d 1372, 1380 (6th Cir. 1996). A bare-bones affidavit, in turn, is commonly defined as one that states only “suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.” United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005) (quoting Weaver, 99 F.3d at 1378). Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts “only the affiant’s belief that probable cause existed.” United States v. Williams, 224 F.3d 530, 533 (6th Cir. 2000) (quoting United States v. Finch, 998 F.2d 349, 353 (6th Cir. 1993)). It provides nothing more than a mere “guess that contraband or evidence of a crime would be found,” United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994), either “completely devoid” of facts to support the affiant’s judgment that probable cause exists, United States v. Carpenter, 360 F.3d 591, 595-96 (6th Cir. 2004) (en banc), or “so vague as to be conclusory or meaningless.” United States v. Frazier, 423 F.3d 526, 536 (6th Cir. 2005) (quoting Carpenter, 360 F.3d at 596). In contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains “a minimally sufficient nexus between the illegal activity and the place to be searched.” Carpenter, 360 F.3d at 596. If the reviewing court is “able to identify in the averring officer’s affidavit some connection, regardless of how remote- it may have been”—“some modicum of evidence, however slight”—“between the criminal activity at issue and the place to be searched,” then the affidavit is not bare bones and official reliance on it is reasonable. Laughton, 409 F.3d at 749-50. A bare-bones affidavit should not be confused with one that lacks probable cause. An affidavit cannot be labeled “bare bones” simply because it lacks the requisite facts and inferences to sustain the magistrate’s probable-cause finding; rather, it must be so lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, no reasonable officer would rely on it. United States v. Helton, 314 F.3d 812, 824 (6th Cir. 2003). The distinction is not merely semantical. There must be daylight between the “bare-bones” and “substantial basis” standards if Leon’s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system’s truth-seeking function. See Leon, 468 U.S. at 906-07, 913-21, 104 S.Ct. 3405; Carpenter, 360 F.3d at 595. Only when law enforcement officials operate in “ ‘deliberate,’ ‘reckless,’ or ‘grossly negligent’ disregard for Fourth Amendment rights” will the “heavy toll” of suppression “pay its way.” Davis v. United States, 564 U.S. 229, 237-38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (quoting Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and Leon, 468 U.S. at 908 n.6, 104 S.Ct. 3405). Otherwise, “when the police act with an objectively ‘reasonable good-faith belief that their conduct is lawful,” excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule. Id. at 238, 131 S.Ct. 2419 (quoting Leon, 468 U.S. at 909, 919). We must therefore find that the defects in an affidavit are apparent in the eyes of a reasonable official before faulting an executive official for complying with his or her duty to execute a court-issued order. Leon, 468 U.S. at 921 (“[0]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.” (quoting Stone v. Powell, 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring))). B. With that legal background in mind, we turn now to the affidavit in this case. Distilled to its essence, it states that, after receiving information that defendant was selling drugs from 196 Turner Lane, Williams verified that tip by conducting a controlled buy on the premises of the residence and investigating defendant’s criminal history and connection to the residence. Taken together, these factual components establish a “minimally sufficient nexus” between defendant’s drug-distribution activity and the residence at 196 Turner Lane. To begin, the informant’s tip does provide some connection between drug distribution and the residence at 196 Turner Lane. For instance, the tip was not a broad allegation that defendant was selling drugs generally. Rather, it identified the precise address at which the criminal activity was occurring, a pertinent factor in establishing a minimal nexus, to say nothing of probable cause. See Carpenter, 360 F.3d at 594 (“[T]he circumstances must indicate why evidence of illegal activity will be found ‘in a particular place.’ ”). More critical, however, are Williams’ additional investigative steps, beginning with the controlled buy from defendant on the premises. By corroborating key components of the informant’s tip—that defendant was personally distributing the specific kind of narcotic (marijuana) at the specific location (the premises of 196 Turner Lane) alleged by the informant— Williams’ affidavit provided a concrete factual link between defendant, his criminal activity, and the residence. Other facts bolster this nexus. First, Williams discovered that defendant had “numerous” drug convictions, lending further credence to the informant’s tip that defendant’s narcotics activity was ongoing and that the controlled buy was not an aberration. Second, he stated that it was known that defendant kept pit bulls “at his residence,” raising the inference that the home at 196 Turner Lane was the site of his drug distribution activity. Far from being “completely devoid” of facts or consisting solely of “suspicions, beliefs, or conclusions,” Laughton, 409 F.3d at 748-49, Williams’ affidavit contains sufficient factual content that, when taken together and read in a common-sense, practical manner, establishes “some connection,” id. at 760, some “minimally sufficient nexus,” Carpenter, 360 F.3d at 596, between suspected drug distribution and the residence. Williams saw defendant sell drugs on the premises of a residence, indicated that the residence was defendant’s by referencing what he had inside, and demonstrated that the sale was not an aberration by documenting defendant’s previous drug convictions—all of which corroborated an informant’s tip that defendant was selling drugs from the residence, Based on these facts, we cannot say that there were “no reasonable grounds for believing that the warrant was properly issued.” Helton, 314 F.3d at 824 (citing Leon, 468 U.S. at 923, 104 S.Ct. 3405). C. A survey of our case law confirms this conclusion. First, Williams’ affidavit looks nothing like the prototypical bare-bones affidavits first identified by the Supreme Court. Second, this court’s good-faith jurisprudence allows a reasonable officer to indulge inferences that would otherwise be insufficient to establish probable cause, several of which may be drawn from Williams’ affidavit. And third, this court has sustained a magistrate’s probable-cause finding based on similar, though not identical, affidavits. 1. The prototypical examples of Leon’s, bare-bones affidavit come from Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). See Leon, 468 U.S. at 915, 104 S.Ct. 3405. In Nathanson, the affiant stated under oath that “he has cause to suspect and does believe that” liquor illegally brought into the United States “is now deposited and contained within the premises” belonging to the defendant. 290 U.S. at 44, 54 S.Ct. 11. In Aguilar, the affiants stated that they “received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.” 378 U.S. at 109, 84 S.Ct. 1509 (footnote omitted). These affidavits were wholly inadequate— what we would call “bare- bones” nowadays—because they presented “a mere affirmation of suspicion and belief without any statement of adequate supporting facts.” Nathanson, 290 U.S. at 46, 54 S.Ct. 11; Aguilar, 378 U.S. at 113-14, 84 S.Ct. 1509; see also Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (stating that the warrants were issued based on “mere ratification of the bare conclusions of others”). The affidavit in'this case bears no resemblance to the Nathanson and Aguilar affidavits. Williams did not merely assert that he has “cause to suspect and does believe” evidence of drug distribution was located at White’s residence, cf. Nathanson, 290 U.S, at 44, 54 S.Ct, 11, nor did he say that he has it on “reliable information from a credible person” that defendant was selling drugs from his residence, cf. Aguilar, 378 U.S. at 109, 84 S.Ct. 1509. Simply put, unlike the affiants in Nathan-son and Aguilar, Williams did not ask the magistrate to simply take his word for it. Rather, he showed his work, explaining that White engaged in a .recorded drug deal-on the premises, that White had a history of drug offenses, and that White had dogs inside the residence. And those facts, while perhaps not enough to give the magistrate a substantial basis to find probable cause, nonetheless supplied “some connection, regardless of how remote,” between White, his drug-distribution activities, and 196 Turner Lane. See Laughton, 409 F.3d at 750. Of course, the affidavits in Nathanson and Aguilar do not represent the universe of unacceptable affidavits, but if we are to keep faith with the prototypes from those cases, Williams’ affidavit cannot fairly be called “bare bones.” 2. Our good-faith jurisprudence provides additional support for our conclusion, giving insight into the type of reasonable inferences that this court will indulge when analyzing an officer’s objective reliance on an affidavit. For instance, in United States v. Van Shutters, an investigation into the defendant’s multistate counterfeiting scheme led law enforcement to request search warrants for two residences, one in Georgia and another in Tennessee. 163 F.3d 331, 335-37 (6th Cir. 1998). The affidavit relating to the Tennessee residence recounted the defendant’s counterfeiting scheme, the specific items to be seized, and it provided a detailed description of the residence. Id. at 336. The affidavit also stated that “rooms in the Tennessee Residence were available” to the defendant, but “completely neglect[ed] to indicate why the affiant believed that Shutters himself had any connection with the Tennessee Residence.” Id. This proved detrimental to sustaining the magistrate’s probable-cause finding, but was not so fatal as to make official reliance on the warrant unreasonable. Id. at 337. Given the particularity with which the affiant described the residence, we held that a reasonable officer would, draw the “common sense inference” that the affiant “visited the premises himself and presumably either observed Shutters in the residence, or determined through investigation that Shutters frequented the premises.” Id. Similarly, in Carpenter, officers Conducting aerial surveillance “spotted patches of marijuana growing in fields approximately 900 feet away from a residence belonging to [the defendant].”. 360 F.3d at 593. They also observed “beaten paths leading from the back door of the residence to the marijuana patches.” Id. Sitting en banc, this court held that the affidavit’s facts “were too vague to provide a substantial basis for the determination of probable cause,” but they “were not so vague as to be concluso-ry or meaningless.” Id. at 596. In fact, because, the affidavit “noted both that the marijuana was growing ‘near’ the residence and that ‘there is a road connecting’ the residence and the marijuana plants,” we could not say that it was “completely devoid of any nexus between the residence and the marijuana that the police observed.” Id. at 595-96. Accordingly, the good-faith exception applied. The takeaway from these cases is that reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable. For instance, vaguely asserting that a suspect had access to rooms in a particular residence will not establish probable cause to search that residence, but providing some factual detail about the residence permits an officer to reasonably infer that there is factual support for the assertion. See Van Shutters, 163 F.3d at 336-37. We have also long accepted the reasonable inference that drug contraband is likely to be found inside drug traffickers’ homes, especially when there is evidence of drug activity near ór around the home. See, e.g., United States v. Williams, 544 F.3d 683, 687 (6th Cir. 2008); see also United States v. Berry, 565 F.3d 332, 339 (6th Cir. 2009). Though there must be sufficient factual support for the inference in order to establish probable cause, so long as the factual content is not “so vague as to be conclusory or meaningless,” that inference is sufficient to permit reasonable reliance on the warrant. See Carpenter, 360 F.3d at 595-96. A reasonable officer is entitled to draw the same inferences from the affidavit in this case. Much like the affidavit in Van Shutters, Williams’ affidavit did not explicitly state that “196 Turner Lane is defendant’s residence.” But Van Shutters indulged the inference that the residence was, in fact, the defendant’s based on the averring officer’s description of the residence. 163 F.3d at 337-38. We must do the same. Williams’ description of what White kept inside the residence and what he did in its driveway allows for the reasonable, albeit not airtight, inference that the residence was, in fact, White’s. Moreover, the inference we drew in Carpenter—that evidence of drug trafficking will be found in the residence around which the suspect has engaged in drug activities—also justifies reasonable reliance on Williams’ affidavit, perhaps with even greater force since the location of White’s illegal activity occurred on the very premises of the place to be searched—we need not rely on a 900-foot path to make the connection. See 360 F.3d at 595-96. 3. Finally, it is also useful to consider our probable-cause precedent; after all, that is the lens through which we evaluate an officer’s reasonable reliance on an affidavit. See Leon, 468 U.S. at 923, 104 S.Ct. 3405 (evaluating reasonable reliance based on the “indicia of probable cause”). Several cases are especially instructive. In United States v. Smith, 783 F.2d 648, 649 (6th Cir. 1986), the affiant “received information from a reliable informant that Eric Helton was producing marijuana at his residence.” Acting on that tip, the affiant went to the location and “observed a marijuana plant growing beside the residence.” Id. The defendant, an occupant of the house, moved to invalidate the search warrant for the residence. We agreed that “[t]he informant’s tip alone would not have been sufficient,” but concluded that the affidavit, “[t]hough sketchy,” established probable cause because “the investigation of the tip did corroborate what [the affiant] had been told.” Id. at 650-51. Even granting defendant the reasonable assumption that Smith’s “sketchy” affidavit represents the irreducible minimum of probable cause, no officer would suspect that an affidavit based on a similar tip but containing more probative corroboration—observation of actual drug distribution, past drug offenses, and a factual connection to the residence—was somehow so lacking in in-dieia of probable cause that he could not reasonably rely on it. Even more factually analogous is our decision in United States v. Jones, 159 F.3d 969 (6th Cir. 1998). In that case, police obtained a search warrant for a residence based on information that (1) a confidential informant made six controlled buys on the premises, (2) two of the buys were audio recorded, and (3) the informant saw the defendant in possession of a distribution quantity of cocaine on the premises in the last 72 hours. Id. at 974. The defendant challenged the probable cause underlying a search warrant because “neither the confidential informant nor the law enforcement officer ... had been inside the house and, therefore, could not have possibly observed any evidence of illegal drug activity therein.” Id. The defendant argued that the affidavit’s reference to the “premises” was insufficient to establish a connection to the house because “the alleged events actually had taken place in • the driveway or in Jones’s car.” Id. This court disagreed, holding that the three facts recited above, in conjunction with the principle that “[i]n the case of drug dealers, evidence is likely to be found where the dealers live,” supported a finding of probable cause to search the residence. Id. at 975 (quoting United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991)). Particularly relevant here, we added: “the fact that the incidents referred to in the affidavits took place on the premises rather than inside the house does not invalidate the search of the house.” Id. at 974-75. Jones is not an anomaly in our probable-cause jurisprudence. In Frazier, this court observed that there is “a series of cases which hold that an informant’s observation of drug trafficking outside of the dealer’s home can provide probable cause to search the dealer’s house.” 423 F.3d at 532-33 (citing United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002); United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000); Jones, 159 F.3d at 974; United States v. Caicedo, 85 F.3d 1184, 1193 (6th Cir. 1996)). And in United States v. Berry, this court observed that “there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant’s home is sufficient to establish probable cause to search the home.” 565 F.3d at 339 (citations omitted); see also United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (finding probable cause despite the fact that “the affidavit d[id] not state that officers observed drugs or evidence going into or out of his residence”). This precedent all but compels the conclusion that the affidavit in this case qualifies for the good-faith exception. In Jones, a confidential informant supplied information that the defendant was selling drugs from a particular address, police conducted a controlled buy in the driveway of that address—though they never observed illegal activity inside the residence—and they sought a warrant within 72 hours. 159 F.3d at 974. If those facts and the accompanying inference that “evidence [of a drug distribution] is likely to be found where the dealers live,” were sufficient to sustain the magistrate’s probable-cause finding in Jones, it follows, a fortiori, that the substantially identical facts in this case are sufficient to satisfy the “less demanding” bare-bones standard. Laughton, 409 F.3d at 748. The same goes for Frazier and Berry: If “an informant’s observation of drug trafficking outside of the dealer’s home,” Frazier, 423 F.3d at 532-33, and “status as a drug dealer plus observation of drug activity near defendant’s home,” Berry, 565 F.3d at 339, are sufficient to establish probable cause, it necessarily follows that they are sufficient to meet the “less demanding” minimal-nexus standard of Leon’s good-faith exception, Laughton, 409 F.3d at 748. In light of this precedent, no reasonable officer could have suspected that the affidavit in this case—which related a first-hand observation of drug distribution by a reputed drug dealer with prior drug offenses on the premises of his residence—was beyond the constitutional pale. 4. The dissent does not agree. It finds each one of these cases distinguishable for one reason or another, and instead finds other cases, namely those that have declined to apply the good-faith exception, more analogous. Fundamentally, it is important to highlight what we see as the root cause for the disagreement in this case: our different approaches to reading affidavits under the good-faith analysis. Absent Leon’s good-faith exception, the ambiguities that the dissent points out might lead to a different outcome. But such is not the state of the law. To determine whether a reasonable officer would rely on a judicially authorized warrant, a reviewing court must read the affidavit reasonably. That means a court must read it holistically, examining the totality of the circumstances and employing a healthy dose of common sense. United States v. Greene, 250 F.3d 471, 479 (6th Cir. 2001). If an inference is obvious from the factual context, a reviewing court should indulge it. United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). The dissent, however, does not read Williams’ affidavit this way. The dissent makes every effort to resist the natural reading of the affidavit, parsing it line-byline in a. way that a reasonable officer wouldn’t. Cf. Greene, 250 F.3d at 479. It reads the affidavit as a critic would, focusing on what is missing as opposed to asking whether what is there is enough to supply some minimal connection between the illegal activity and the place to be searched. Cf. Allen, 211 F.3d at 975 (“The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.”). This approach driyes the dissent’s two major concerns with the affidavit: its failure to connect White to 196 Turner Lane and its failure to document ongoing drug trafficking inside the residence. The dissent disagrees that the affidavit establishes that 196 Turner- Lane is White’s residence. The statement that defendant has dogs “at his residence” is not enough, the dissent says, because the sentence does not specifically say “196 Turner Lane.” But this asks for too much. This court has never required affidavits to “use magic words” or spell out “what is obvious in context.” Id. And context makes perfectly clear'that “his residence” in the final sentence is a reference to 196 Turner Lane because the statement was made in reference to the circumstances- that, officers should expect to confront when searching 196 Turner Lane, Only by reading the operative sentence with a magnifying glass to the exclusion of the rest of the affidavit could the dissent reject our' conclusion that a reasonable officer reviewing Williams’ affidavit would understand .that 196 Turner Lane is White’s residence. The dissent also contends that the search cannot be saved under the good-faith exception because the affidavit failed to recount a drug sale inside the residence. We can agree that Williams' never observed White sell drugs from inside the residence without conceding that the totality of the facts in .the affidavit are insufficient to establish some, minimal connection between White’s drug trafficking and his residence. The affidavit states that police had information from a confidential source that “marijuana was being sold”, from 196 Turner Lane, a fact that Williams-was able to corroborate by executing a controlled buy involving the same narcotic in the driveway of 196 Turner Lane and conducting additional investigative steps that connected White to the residence and prior narcotics crimes. Rather than indulge the inferences reasonably drawn from the totality of these facts—that White is a drug dealer selling marijuana on the premises, of his residence, cf. Berry, 665 F.3d at 339— the dissent isolates each fact and at every turn insists on more: the affidavit recounts a single drug sale, but not multiple ones; it recounts a drug sale on the premises, but not inside the residence', it recounts what White had inside his residence, but it wasn’t incriminating',■ and so on. Yes, the affidavit could have said all of the things that the dissent notes are “missing” and, if it did, there would no dispute that the affidavit established probable cause. But the dissent’s glasS-half-full, divide-and-conquer approach is not how we read affidavits for purposes of the good-faith exception. See United States v. Thomas, 605 F.3d 300, 311 (6th Cir. 2010) (noting that the dissenting opinion “improperly divides and attacks the evidence provided in the affidavit instead of viewing the evidence in its totality”). We look not to what the affidavit could have said, but rather what it did say and. ask whether a reasonable officer would have relied on a judicially authorized warrant based on that affidavit. Allen, 211 F.3d at 975. And for the reasons discussed above that we need not repeat here, the facts related in Williams’ affidavit are sufficient to establish some minimal nexus between White, his drug sales activity, and his home. The dissent’s unforgiving approach to reading the affidavit in turn influences its application of our good-faith precedent. The dissent concludes that Jones is distinguishable because it involved multiple c,on-trolled buys; Frazier and Berry are not analogous because there was more evidence of ongoing drug trafficking; and Van Shutters is inapposite because it involved a longer investigation. But all of these are differences of degree, not kind. Aaid when the governing legal scheme eschews “rigid rules, bright-line tests, and mechanistic inquiries,” Florida v. Harris, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013), and when there is no controlled-buy, trafficking-activity, or investigative-hours quota that an affiant must meet before we can find good-faith reliance, differences of degree do not necessarily counsel a different result. More importantly, the differences in the cases that the dissent highlights do not detract from the basic purposes for which we employ them. Jones did involve more controlled buys than our case, but none of them occurred inside the residence, putting to rest the dissent’s contention that the absence of trafficking activity, inside the residence renders reliance on this affidavit unreasonable. See 159 F.3d at 974-75 (■“[T]he fact that the incidents referred to in the affidavits took place on the premises rather than inside the house does not invalidate the search of the house.”). Frazier and Berry may have involved more drug-trafficking activity, but neither case intended to set the minimum requirements for attaining “drug dealer” status, a status that is reasonably inferable in this case based on the information that White was selling drugs from his- residence,, police saw him sell drugs on the same premises, and he had a history with narcotic offenses. Qf Berry, 565 F.3d at 339; Frazier, 423 F.3d at 533. Finally, the officer in Van Shutters may have conducted a lengthier investigation, but nothing in that opinion indicates that good-faith reliance was directly tied to the length of the investigation; rather, we held that it was reasonable to infer that the residence searched was the defendant’s based on the type of information contained in the affidavit. See 163 F.3d at 337-38. Applying that principle here, it is imminently reasonable to infer that 196 Turner Lane was defendant’s residence based on Williams’ description of what he kept inside it (i.e., pit bulls). In contrast to these cases, the case law on which the dissent relies is distinguishable in the most material respects. First, consider United States v. McPhearson, 469 F.3d 618 (6th Cir. 2006). In McPhearson, police executed an arrest warrant for the defendant at his home, arresting him on his front porch. Id. at 520. In the ensuing pat-down, police recovered drugs on the defendant’s person. Id. at 520-21. On that basis alone, the officers sought and received a search warrant for his residence, believing it contained evidence of “drug trafficking.” Id. at 521. The defendant later moved to suppress the evidence gathered from the search, claiming that the warrant lacked probable cause. This court agreed with the defendant that the affidavit “did no more than state that McPhearson, who resided at [the address of the home to be searched], was arrested for a non-drug offense with a quantity of crack cocaine on his person.” Id. at 524. These averments were insufficient because “[a] suspect’s mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause.” Id. (brackets and internal quotation marks omitted). Of particular concern to the court was the absence of any allegation that McPhearson was a known drug dealer: “In the absence of any facts connecting McPhearson to drug trafficking, the affidavit in this ease cannot support the inference that evidence of wrongdoing would be found in McPhear-son’s home because drugs were found on his person.” Id. at 525. The court then proceeded to the good-faith analysis. The court concluded that the affidavit did not “establish the minimal nexus that has justified application of the good-faith exception” because “[t]he only connection in the affidavit between [the residence] and drug trafficking was that Jackson police arrested McPhearson at his residence and found crack cocaine in his pocket in a search incident to the arrest.” Id. at 526. The court distinguished our cases applying the good-faith exception because those cases “depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that the police were investigating.” Id. In contrast, the affidavit in McPhearson “did not allege that McPhear-son was involved in drug dealing, that hallmarks of drug dealing had been witnessed at his home, ... or that the investigating officers’ experience in narcotics investigation suggested to them that [the amount of seized] cocaine was a quantity for resale.” Id. at 527. This case is not McPhearson. As this court has previously explained, the “chief concern in McPhearson was the ‘absence of any facts connecting McPhearson to drug trafficking.’ ” United States v. Taylor, 471 Fed.Appx. 499, 513 (6th Cir. 2012) (quoting McPhearson, 469 F.3d at 525); see also United States v. Feagan, 472 Fed.Appx. 382, 393 (6th Cir. 2012) (“In McPhearson, we drew a sharp distinction between the defendant in that case—who was arrested for assault, and found with only a small amount of drugs on his person—and suspects believed to be ongoing drug traffickers.”). McPhearson itself acknowledged that our eases apply the good-faith exception when the affidavit indicates that the “defendants were known to have participated previously in the type of criminal activity that the police were investigating.” McPhearson, 469 F.3d at 526. The affidavit in this case not only indicates that defendant was known to distribute drugs from a particular address, it relates a controlled buy from the defendant on those premises within the last 72 hours. Put differently, the affidavit contains two features that McPhearson itself said would have supported a minimal connection had they been included in the affidavit: allegations that the suspect “was involved in drug dealing” and “hallmarks of drug dealing had been witnessed at his home.” Cf. id. at 527. The dissent’s reliance on United States v. Brown, 828 F.3d 375 (6th Cir. 2016) fares no better. In Brown, police sought a search warrant for the defendant’s home after they recovered drugs from a car that was parked at a codefendant’s house but was registered to the defendant’s home address. Id. at 379-80. The affidavit also stated that the defendant had a criminal history involving drug offenses. Id. at 380. This court rejected the claim that these facts were sufficient to establish probable cause to search the defendant’s residence. We said, “[T]he search warrant affidavit contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there. The affidavit did not suggest that a rehable confidential informant had purchased drugs there, that the police had ever conducted surveillance at Brown’s home, or that the recorded telephone conversations linked drug trafficking to Brown’s residence.” Id. at 382-83. In the absence of these facts, Brown’s status as a known drug dealer was not enough to establish probable cause. Id. at 383. Nor was it sufficient to pass muster under the “less demanding” bare-bones standard. Id. at 385-86. “Save for a passing reference to Brown’s car registration,” the court observed, “the affidavit [was] devoid of facts connecting the residence to the alleged drug dealing activity.” Id. at 385. Because the affidavit failed to “draw some plausible connection to the residence,” the good-faith exception did not save the search. Id. at 385-86. This case is not Bronm, either. The affidavit in Bronm was “devoid” of facts connecting drug distribution to the defendant’s home, failing to “draw some plausible connection to the residence.” Id. at 385. It lacked “evidence that Brown distributed narcotics from his home,” “that any suspicious activity had taken place there,” “that a reliable confidential informant, had purchased drugs there,” or “that the police had ever conducted surveillance at Brown’s home.” Id. at 382. In contrast, the affidavit in this case states that White sold drugs from the premises of his residence, engaged in peculiar behavior by waiting in his driveway to consummate the deal, and had dogs inside his home. In other words, it contains facts that would have saved the search in Brown. In the final analysis, the disagreement in this case stems from a difference in approaches to reading affidavits. Taking a holistic, common-sense approach, we draw certain factual conclusions, which, in turn, inform our analysis of where this case fits in the spectrum of cases in which this court has applied the good-faith exception. The dissent, unwilling to accept those same factual predicates as a result of a cramped reading of the affidavit, places this case at the opposite end of the spectrum. And this disagreement does have Fourth Amendment consequences, though not in the way the dissent predicts. Contrary to the dissent’s assertion, excluding the evidence in this case will not advance the core purpose of the Fourth Amendment in any appreciable way. As the Supreme Court made clear in Leon, when an officer secures a judicial warrant before conducting a search, as Williams did in this case, “[penalizing the officer for the magistrate’s, error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.” 468 U.S. at 921, 104 S.Ct. 3405. In order to deter unlawful police conduct in these cases, then, it is hot enough that we find the warrant lacked probable cause; we must. go further and conclude that there were “no reasonable grounds for believing that the warrant was properly issued.” Id. at 922-23, 104 S.Ct. 3405; see also Davis v. United States, 564 U.S. 229, 237-38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (“[S]ociety must swallow this bitter pill when necessary, but only as a ‘last resort,’ ” and only when “the police exhibit ‘deliberate,’ ‘reckless,’ or ‘grossly negligent’ disregard for Fourth Amendment rights.” (citation omitted». This inquiry is purposefully “less demanding,” Laughton, 409 F.3d at 748, for there must be a difference between the “bare-bones” and “substantial basis” standards if Leon’s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating thp criminal justice system’s truth-seeking function, see Leon, 468 U.S. at 906-07, 913-21, 104 S.Ct. 3405; Carpenter, 360 F.3d at 595. D. To summarize: Williams’ affidavit is not “bare bones” or otherwise “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” See Leon, 468 U.S. at 923, 104 S.Ct. 3405. it contains sufficient factual content that, when read in a holistic, common-sense manner, establishes a “minimally sufficient nexus” between defendant’s drug-distribution activity and his residence. Carpenter, 360 F.3d at 596. Its averments show that defendant was selling drugs from a residence, that the affiant personally observed defendant sell drugs on those premises, that he knew defendant had prior drug offenses, and that the residence was, in fact, defendant’s. That factual content, though maybe.not enough to establish probable cause, stands in stark contrast to prototypical bare-bones affidavits from Nathanson and Aguilar. Indeed, a reasonable - officer could draw from Williams’ affidavit many of the same inferences that this court has previously indulged in upholding a search warrant under the good-faith exception, see id. at 595-96; Van Shutters, 163 F.3d at 336-37, a conclusion that is only bolstered by the fact that this court has found probable cause in similar, though not identical, affidavits, see Jones, 159 F.3d at 974-75; Smith, 783 F.2d 648, 649-51. For these reasons, the good-faith exception applies, and we affirm the district court’s decision denying defendant’s motion to suppress. IV. Defendant also challenges his sentence-in two respects. First, he argues that the district court erred by failing to specify the start date for his term of incarceration. Had the district court done so, he argues, his concurrent sentence would have been calculated .from the time he was in “federal custody”—which,, according to his reading of the PSIR,. was February 25, 2014— making his release date sometime in November 2016. Second, he argues that the district court failed to recognize its authority to adjust his sentence under U.S.S.G. § 5G1.3(b). He acknowledges that we review these unpreserved claims for plain error. United States v. Mahbub, 818 F.3d 213, 223 (6th Cir. 2016). Defendant’s first argument is based on the faulty premise that he was in “federal custody” beginning on February 25, 2014. Because he was serving an ongoing state sentence at the time of his initial appearance, defendant came to federal authorities on a writ of habeas corpus ad prosequendum, which he acknowledges. When a State sends a prisoner to federal authorities pursuant to such a writ, “the prisoner is merely ‘on loan’ to the federal authorities,” with the State retaining primary jurisdiction over the prisoner. United States v. Casas, 425 F.3d 23, 67 (1st Cir. 2005). As a consequence, “[a] federal sentence does not begin to run ... when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prose-quendum.” United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). “[Federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.” Id. Accordingly, the district court did not plainly err in failing to specify February 25, 2014, as the start date for his federal sentence— indeed, it would have been wrong to do so. Although it is. unclear when exactly defendant officially came into federal custody, we need not wander down that rabbit hole in order to resolve defendant’s claim. “[A]fter a defendant is sentenced, it falls to BOP, not the district judge, to determine when a sentence is deemed to ‘commence,’ ” United States v. Wells, 473 F.3d 640, 645 (6th Cir. 2007) (citation omitted), something the district court itself recognized at sentencing. Defendant’s second argument is also without merit. Relying on U.S.S.G. § 5G1.3(b), defendant contends that the district court erred in failing to adjust his sentence for the time he served on a probation-revocation sentence arising from the same conduct as the instant offense. Section 5G1.3(b) does direct district courts to “adjust the sentence for any period of imprisonment already served on [an] undischarged term of imprisonment” when that prior term of imprisonment “resulted from another offense that is relevant conduct to the instant offense of conviction under [U.S.S.G. § lB1.3(a)(l)-(3)].” U.S.S.G. § 5G1.3(b). However, the Guidelines Commentary indicates that “[subsection (d) applies in cases in which the defendant was on ... state probation ... at the time of the instant offense and has had such probation .., revoked.” U.S.S.G. § 5G1.3, comment. (n.4(C)) (emphasis added). Subsection (d), in turn, provides that “the sentence for the instant offense may be imposed to run concurrently ... to the prior undischarged term of imprisonment,” U.S.S.G. § 5G1.3(d), which is precisely what the district court did in this case. We therefore cannot conclude that the district court committed plain error in applying § 5G1.3. V. For these reasons, we affirm defendant’s convictions and sentences, . Defendant also mentions the fourth exception to Leon—“where [a] warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.” See Washington, 380 F.3d at 241. However, the body of his argument focuses solely on the contents of the affidavit, which suggests to us that he conflated the warrant with the supporting affidavit. The "facially deficient” exception pertains to the former, not the latter. See Leon, 468 U.S. at 923, 104 S.Ct. 3405 (“a warrant may be so facially deficient .... ”). Thus, Leon’s fourth exception is inapplicable.