NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0524n.06

Case No. 23-1963

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 17, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| SAUL DOUGLAS BRIGGS, | ) |  |
| Defendant-Appellant. | ) | OPINION |

Before: GRIFFIN, STRANCH, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Saul Briggs appeals from the entry of judgment after the district court denied his motion to suppress evidence. We affirm.

**I.**

In 2022, Briggs and another suspected drug trafficker, K.L.K., started using a house on Letart Avenue in Muskegon, Michigan, to store drugs, firearms, and other drug-trafficking materials. For about four months, Briggs visited the Letart residence daily. During this time, officers—who had been surveilling Briggs and K.L.K. since 2019—observed activity indicative of drug trafficking at the house. Accordingly, they sought a warrant to search the Letart residence.

Special Agent Heather Williamson with the Drug Enforcement Administration swore out an affidavit in support of the search warrant explaining that she believed Briggs and K.L.K. used the Letart residence as a stash house for drugs and money. The affidavit described how officers observed frequent short stays at the house by various individuals. Aside from these quick visits, the house appeared vacant. Officers also intercepted a call where K.L.K. discussed selling drugs

to another suspected drug trafficker. They then observed K.L.K. stop at the Letart residence right before completing the suspected drug transaction. On at least fifteen occasions, officers saw K.L.K. enter the house, leave with a small bag, and hide the bag under the hood of his car. Officers also observed Briggs and other individuals carrying large boxes in and out of the Letart residence, each time followed by an increase in short stays at the house by various people. On one such occasion, Briggs brought a box out of the Letart residence, drove directly to a house on Kingsley Street, and left after about ten minutes. Two days later, officers searched the Kingsley house and found large quantities of drugs and firearms.

Based on the information contained in the affidavit, a magistrate judge issued a search warrant for the Letart residence. Officers executed the warrant shortly after Briggs arrived at the house. They found large quantities of drugs (fentanyl, cocaine, black-tar heroin, and methamphetamine), as well as digital scales, baggies, gloves, presses, cutting agents, blenders, and a money counter. Officers also found several firearms in the house and in Briggs's vehicle.

After a grand jury indicted Briggs, he moved to suppress the evidence found at the Letart residence. The district court denied Briggs's motion on multiple grounds. First, it found that Briggs lacked standing to challenge the search. Second, the court held that the affidavit established probable cause for the search. And third, it determined that the good-faith exception to the exclusionary rule applied even if the affidavit failed to establish probable cause and the warrant was invalid.

Briggs pleaded guilty to possession of controlled substances with intent to distribute and possession of firearms in furtherance of drug trafficking, reserving the right to appeal the suppression decision.

**II.**

When considering a district court's decision on a motion to suppress evidence, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Shank*, 543 F.3d 309, 312 (6th Cir. 2008) (citation omitted). A factual finding is "clearly erroneous" if, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Id.* at 312 (quotation omitted). We review the evidence "in the light most likely to support the district court's decision." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quotation omitted).

**III.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also requires officers to have probable cause to obtain a warrant to search a house. *Id.*; *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). "[P]robable cause is a reasonable ground for belief of guilt" that "must be particularized with respect to the [place] to be searched." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation omitted). To establish probable cause, a search-warrant affidavit must show a "nexus between the place to be searched and the evidence sought." *Laughton*, 409 F.3d at 747 (quotation omitted). A "nexus" exists if there is "a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). The exclusionary rule prohibits using evidence obtained in violation of the Fourth Amendment at trial. *Davis v. United States*, 564 U.S. 229, 231–32 (2011).

But even if an affidavit fails to establish probable cause, courts need not suppress evidence from the search if the good-faith exception to the exclusionary rule applies. *United States v.*

*Sanders*, 106 F.4th 455, 467–68 (6th Cir. 2024) (en banc).  Under the good-faith exception, if officers acted in "objectively reasonable reliance on a search warrant that is subsequently invalidated," the exclusionary rule does not apply.  *Laughton*, 409 F.3d at 748 (citing *United States v. Leon*, 468 U.S. 897, 918–21 (1984)).

That said, officers cannot obtain evidence through "deliberate, reckless, or grossly negligent conduct."  *Sanders*, 106 F.4th at 467 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).  Indeed, the good-faith exception does not apply if an officer relies on an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S. at 923 (quotation omitted).  We refer to these deficient affidavits as "bare bones" affidavits.  *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

An affidavit is "bare bones" if it "nakedly assume[s] or vaguely conclude[s], without attempting to demonstrate why, probable cause has been satisfied."  *Sanders*, 106 F.4th at 468.  For example, we have found affidavits to be "bare bones" where they: (1) provided "nothing more than a mere guess that contraband or evidence of a crime would be found"; (2) were "completely devoid" of facts supporting probable cause; or (3) were "so vague as to be conclusory or meaningless."  *White*, 874 F.3d at 496 (internal quotation marks omitted).

Importantly, a bare-bones affidavit is not one that simply lacks probable cause—instead, a bare-bones affidavit "must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it."  *Id.* at 497 (citation omitted).  Accordingly, where an affidavit provides even a "modicum of evidence, however slight, showing *some* connection, regardless of how remote it may have been between the criminal activity at issue and location of the search, there exists a minimally sufficient nexus necessitating application of the good faith rule."  *Sanders*, 106 F.4th at 469 (internal quotation marks omitted).

For several reasons, the search-warrant affidavit in this case is not bare bones. Therefore, even assuming that Briggs has standing and the affidavit lacked probable cause, the district court did not err in denying Briggs's motion because the good-faith exception applies. The affidavit provided several facts supporting a minimally sufficient nexus connecting drug-trafficking activity and the Letart residence.

First, the affidavit explained that different individuals often stopped at the Letart residence—which appeared to be vacant—for short stays. The frequency and duration of these short stays pointed to drug-trafficking activity.

Second, officers watched K.L.K. leave the Letart residence just before engaging in a suspected drug transaction.

Third, officers often saw K.L.K. leave the Letart residence with small bags that he placed under the hood of his car. Williamson stated in the affidavit that it is common for drug traffickers to hide drugs "during transport . . . under the hood of vehicles." R. 49, PageID 285. And on one such occasion, officers saw K.L.K. drive to a different address, stay for a short period, immediately return to the Letart residence, remove a bag from under the hood, and go inside the house.

Fourth, officers watched Briggs and other individuals carry large boxes in and out of the Letart residence. In the days that followed, they saw "an increase in short stay traffic," which again reflected drug-trafficking activity. *Id.* at 290. On one occasion, Briggs carried a box out of the Letart residence and drove directly to another house, where he stayed for a short time. Officers searched that other house two days later and found large quantities of drugs and firearms. Williamson indicated that these drugs likely "correlate[d]" with Briggs's "short stay visit just two days prior to the search." *Id.* at 287. All of this activity supports the conclusion that K.L.K. and Briggs were using the Letart residence for drug-trafficking purposes.

On top of the many ties between the Letart residence and drug-trafficking activity, the affidavit also established Briggs's and K.L.K.'s criminal histories related to drug dealing. *See Sanders*, 106 F.4th at 461–62. And the affidavit detailed how Williamson's extensive training and experience supported the conclusions in the affidavit. *See id.*; *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

Still, Briggs persists in his argument that the affidavit here is bare bones. He contends that because officers surveilled him for years, they improperly relied on their "subjective knowledge" about him when executing the affidavit.[1] D. 19 at p.22. He also asserts that officers "made broad and unsupported assumptions" that he was trafficking drugs because he had a prior drug conviction. *Id.* at 23. But contrary to Briggs's assertions, the affidavit contained more than mere assumptions or speculation; instead, it identified several pieces of evidence connecting the Letart residence with drug-trafficking activity.

Briggs further argues that this case is like *United States v. Brown*. 828 F.3d 375 (6th Cir. 2016). In *Brown*, officers searched the defendant's home after his car—which was parked at another residence—tested positive for drugs. *Id.* at 382–83. We held that the good-faith exception did not apply because the affidavit failed to state whether officers "ever surveilled [the defendant's] home or otherwise attempted any investigation regarding whether the residence was linked to the alleged drug conspiracy." *Id.* at 385–86. Instead, the affidavit identified only one fact connecting the defendant's home with drug activity—that his car was registered there—thus allowing us to conclude that it was "so lacking in indicia of probable cause as to render official belief in its

---

[1] The record is unclear whether the same officers who surveilled Briggs executed the warrant. Even if we assume so, however, the affidavit contained several objective facts and did not rely solely on officers' subjective knowledge of Briggs. *See United States v. Hodson*, 543 F.3d 286, 293–94 (6th Cir. 2008) (subjective knowledge alone is not enough to show good faith).

existence entirely unreasonable." *Id.* at 379, 385–86 (quotation omitted). Here though, officers surveilled the Letart residence for months. And through that surveillance, they observed several events connecting the house with drug-trafficking activity, which the affidavit detailed.

The search-warrant affidavit here in fact resembles the one in *Sanders*. There, we found the good-faith exception applied to a search of the defendant's apartment. 106 F.4th at 469. The affidavit identified three facts connecting the apartment to drug-trafficking evidence: (1) the defendant returned to the apartment after a controlled buy; (2) he went to a second controlled buy directly from the apartment; and (3) a confidential informant told officers that the defendant used the apartment to traffic drugs. *Id.* We explained that such "ties between [the defendant's] drug dealing" and the apartment constituted more than "a modicum of evidence"; and that "the affidavit did not blindly guess that evidence of drug trafficking would be discovered at the apartment." *Id.* So too here. Officers saw K.L.K. go to the Letart residence before engaging in apparent drug transactions. And as described above, the affidavit identified several other ties between Letart and drug-trafficking evidence.

The affidavit here did not "entirely fail to connect the evidence of wrongdoing" to the Letart residence. *See id.* Instead, it identified several facts linking the Letart residence to drug-trafficking activity. As a result, it was objectively reasonable for officers to rely on the warrant.

**IV.**

For these reasons, we **AFFIRM** the district court's judgment.