RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee*,

    *v.*

EDWARD LEONIDAS LEWIS,

                    *Defendant-Appellant*.

> Nos. 22-5593/5800

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Frankfort.
No. 3:21-cr-00021—Gregory F. Van Tatenhove, District Judge.

Decided and Filed:  September 1, 2023

Before:  MOORE, CLAY, and GIBBONS, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  David J. Guarnieri, MCBRAYER PLLC, Lexington, Kentucky, for Appellant. Lauren Tanner Bradley, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge.  Kentucky State Police officers searched Edward Lewis's laptop, cell phone, and thumb drive and found evidence of child pornography. Lewis moved to suppress the evidence, arguing that it was obtained through an unlawful search and seizure of his electronic devices.  The district court found that the good-faith exception to the exclusionary rule applied and denied Lewis's motion, and Lewis pleaded guilty while reserving

his right to bring this appeal. We **REVERSE** the district court's order denying Lewis's motion to suppress, **VACATE** Lewis's conviction, and **REMAND** for further proceedings.

## I. BACKGROUND

In 2019, federal Homeland Security agents received a tip from a foreign law-enforcement agency that an internet-protocol address later connected to Lewis was "viewing child sexual exploitation online[.]" R. 35 (Hr'g Tr. at 11, 78–79) (Page ID #207, 274–75). The agents notified the Kentucky State Police, who opened an investigation. *Id.* at 10–12 (Page ID #206–08).

Two years later, in February 2021, Detective Anthony Gatson of the Kentucky State Police and Homeland Security Special Agents Brian Minnick and Brandon Even traveled to Lewis's home as part of their ongoing investigation. *Id.* at 13, 56–57 (Page ID #209, 252–53). Detective Gatson knocked on Lewis's door, which Lewis answered. *Id.* at 13 (Page ID #209). Detective Gatson identified himself and the Homeland Security agents to Lewis, and "asked if [they] could speak to [Lewis] about a federal complaint of some alleged crimes over the internet from the federal government." *Id.* Lewis invited Detective Gatson and the agents inside. *Id.*

Inside Lewis's home, Detective Gatson explained that he had "been told there was child sexual exploitation activity at the house." *Id.* Detective Gatson asked Lewis "if he would mind if someone came over and looked at . . . his devices." *Id.* Lewis responded that he had no objection, *id.*, and agreed to sign a consent form stating that he "consent[ed] to a complete search of the premises, property or vehicle located" at his residence "and more particularly described as Samsung Galaxy Note 9 [and] HP Pavilion Laptop[,]" R. 26-2 (Consent Form at 1) (Page ID #141). Detective Gatson then called for a forensic examiner to come to Lewis's home and "preview the items" described in the signed consent form. R. 35 (Hr'g Tr. at 13–14) (Page ID #209–10).

Approximately twenty minutes later, Jason Rollins, a forensic examiner with the Kentucky State Police, arrived at Lewis's home. *Id.* at 20 (Page ID #216). Rollins generated a preview of Lewis's laptop, which revealed several file names indicative of child pornography, including "2yo_boy," "Tara," and "pedomom." *Id.* at 21–22 (Page ID #217–18). Rollins also

reviewed Lewis's cell phone, where he found thumbnail images, which were determined on an unspecified later date to be taken from videos of Lewis's cousin's children bathing naked in a bathroom. *Id.* at 23–24 (Page ID #219–20). As Rollins was searching Lewis's laptop and cell phone, Lewis reportedly stated that he knew it was illegal to save child pornography but that he did not know that it was illegal merely to look at it. *Id.* at 39 (Page ID #235). Rollins shared the results of his initial searches with Detective Gatson, but neither Rollins nor Detective Gatson opened any of the files or thumbnail images on Lewis's laptop or cell phone. *Id.* at 23 (Page ID #219).

Detective Gatson called a Commonwealth prosecutor to ask for advice. *Id.* at 25 (Page ID #221). The prosecutor told Detective Gatson to arrest Lewis and obtain a search warrant for his residence. *Id.* Following that advice, Detective Gatson asked Lewis to step outside and read him his *Miranda* rights. *Id.* at 26 (Page ID #222); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Lewis invoked his rights, but he did not say that he was revoking his consent to the search of his electronic devices or his home. R. 35 (Hr'g Tr. at 28) (Page ID #224). Another Kentucky State Police officer then arrived and drove Lewis to jail. *Id.* at 18, 52 (Page ID #214, 248).

After Lewis was arrested, Detective Gatson returned to his office while Special Agents Minnick and Even "sat on the front porch to secure the house[.]" *Id.* at 29 (Page ID #225). Detective Gatson prepared a search warrant for Lewis's house and any electronic devices stored inside the home that could contain evidence of child pornography, including the laptop and cell phone that Detective Gatson and Rollins had reviewed at Lewis's home. *Id.* Detective Gatson did not share the proposed search warrant or his affidavit in support of the warrant with a prosecutor, but instead took the documents directly to a Franklin County judge. *Id.* at 57 (Page ID #253). Detective Gatson did not provide the state judge with any additional information beyond what he included in the proposed search warrant and his affidavit. *Id.* at 29 (Page ID #225). The state judge signed the search warrant. *Id.*; R. 24-3 (Search Warrant at 6) (Page ID #107).

Law-enforcement officers subsequently executed the search warrant, searching Lewis's home and seizing his laptop, cell phone, and other electronic devices.  R. 35 (Hr'g Tr. at 31) (Page ID #227).  The officers took the devices to a state laboratory, where the devices were forensically searched.  *Id.*  The forensic search revealed evidence of child pornography on Lewis's laptop, cell phone, and USB thumb drive.  *Id.*; R. 24-3 (Search Warrant Return at 1) (Page ID #111).

Lewis was indicted in October 2021 and charged with seven counts of producing, receiving, and possessing child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), 2252(a)(2), and 2251(a)(4)(B).  R. 1 (Indictment at 1–4) (Page ID #1–4).  Lewis pleaded not guilty and later moved under the Fourth Amendment to suppress the evidence obtained from his laptop, cell phone, and thumb drive as the fruits of an unlawful search and seizure.  R. 11 (Minute Entry at 1) (Page ID #28); R. 24 (Mot. to Suppress at 1) (Page ID #82).  He argued that the search warrant authorizing the search and seizure of his electronic devices was not supported by probable cause and, among other things, that the affidavit Detective Gatson submitted in support of the search warrant was a bare-bones affidavit.  R. 24-1 (Mem. at 3–4) (Page ID #86–87).

A magistrate judge held a hearing on Lewis's motion to suppress and later issued a report and recommendation to the district court recommending that Lewis's motion be denied.  *United States v. Lewis*, No. 3:21-CR-00021-GFVT-EBA, 2022 WL 1284061, at *1 (E.D. Ky. Jan. 11, 2022) (*Lewis I*), *report and recommendation rejected*, 591 F. Supp. 3d 177 (E.D. Ky. 2022) (*Lewis II*).  The magistrate judge declined to address Lewis's challenges to the search warrant. *Lewis I*, 2022 WL 1284061, at *7.  The magistrate judge instead found that Lewis had knowingly and voluntarily consented to the search of his electronic devices, that Lewis's consent authorized not only the initial preview of his devices but also the subsequent seizure and forensic examination of the devices, and that Lewis had not withdrawn his consent at any time.  *Id.* at *4–6.  Lewis objected to the report and recommendation.  R. 36 (Objs. to R&R at 1–19) (Page ID #284–302).

The district court declined to adopt the report and recommendation but agreed that Lewis's motion should be denied on other grounds.  *Lewis II*, 591 F. Supp. 3d at 181.  The

district court disagreed with the magistrate judge's analysis of the scope of Lewis's consent, finding that Lewis had consented to the preview of his electronic devices but not to the subsequent seizure or search of those devices. *Id.* at 185. The district court further agreed with Lewis that the search warrant failed to establish probable cause to believe that his electronic devices contained evidence of a crime. *Id.* at 186–87. But the district court ultimately found that suppression was inappropriate because law-enforcement officers had relied on the search warrant in good faith. *Id.* at 187–88. The district court therefore denied Lewis's motion to suppress. *Id.* at 190–91.

Following the denial of his motion to suppress, Lewis signed a conditional plea agreement pursuant to which he pleaded guilty to one count of producing child pornography, in violation of 18 U.S.C. § 2251(a), but retained his right to appeal the district court's suppression order and to withdraw his plea if he prevailed on that appeal. R. 46 (Plea Agreement at 1–2) (Page ID #359–60). The district court sentenced Lewis to 300 months' imprisonment and a life term of supervised release. R. 57 (Am. Judgment at 2–3) (Page ID #409–10). Lewis filed this timely appeal.

## II. ANALYSIS

Lewis appeals the denial of his motion to suppress, challenging the district court's finding that the good-faith exception to the exclusionary rule precludes suppression of evidence recovered from his electronic devices. We review the district court's conclusions of law de novo and its factual findings for clear error. *United States v. Master*, 614 F.3d 236, 238 (6th Cir. 2010).

### A. The Search Warrant

The district court found that the search warrant was not supported by probable cause but that the good-faith exception applied. *Lewis* II, 591 F. Supp. 3d at 187. We accord "great deference" to the state magistrate's probable-cause determination, but we give no particular weight to the district court's review of that determination. *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) (quotation omitted) (quoting *United States v. Terry*, 522 F.3d 645, 647

(6th Cir. 2008)). The district court's finding that the "good faith exception applies is a legal conclusion that we review de novo." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).

### 1. Probable Cause

The Fourth Amendment provides that a search warrant may issue only "upon probable cause, supported by Oath or affirmation[.]" U.S. Const. amend IV. When determining whether a search warrant was supported by probable cause, we limit our review to the "four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). To establish probable cause for a search warrant, "an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (quoting *Frazier*, 423 F.3d at 531).

Here, the state-court judge issued a search warrant based on Detective Gatson's affidavit. In the government's words, Detective Gatson's affidavit "detailed his considerable experience investigating child sexual exploitation crimes and included boilerplate language concerning such investigations." Appellee Br. at 4–5. The affidavit then "set forth only the facts that" Detective Gatson "believe[d] [were] necessary to establish probable cause to believe that evidence, fruits and instrumentalities of violations of" Kentucky's child sexual-exploitation laws were "present at" Lewis's home. R. 24-3 (Gatson Aff. at 4) (Page ID #105). Those facts were:

> An HSI investigation identified Edward L Lewis . . . as a person of interest. HSI SA Minnick requested assistance with interviewing Mr. Lewis. Mr. Lewis was located at his residence at [address.] Mr. Lewis gave consent to search his laptop and cell phone. During [the] search it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation. The search based on consent was stopped and Mr. Lewis was arrested.

> Based on the affiant's knowledge, experience and training, Edward L Lewis has demonstrated a pattern of criminal activity related to child pornography, and there is a reasonable likelihood that the user treats child pornography as a valuable commodity to be retained and collected, a characteristic common to many people interested in child pornography. It is, therefore, likely that evidence of the contraband remains in the user's possession[.]

*Id.*

The government does not dispute that Detective Gatson's affidavit failed to establish probable cause. "Detective Gatson provided the state judge only one fact in support of the existence of probable cause: that a search of Mr. Lewis's laptop and cell phone had occurred." *Lewis II*, 591 F. Supp. 3d at 186. Absent additional information, such as a description of the evidence uncovered during that search, Detective Gatson's affidavit merely stated his belief that Lewis had viewed child pornography. That conclusory statement was too vague and insubstantial to establish probable cause to search Lewis's electronic devices. *See United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). The search warrant that was issued based on Detective Gatson's affidavit therefore violated the Fourth Amendment's probable-cause requirement.

### 2. Good Faith

Generally, evidence obtained in violation of the Fourth Amendment must be excluded. *See United States v. Rice*, 478 F.3d 704, 711 (6th Cir. 2007). In *United States v. Leon*, however, the Supreme Court recognized a good-faith exception to the exclusionary rule that applies when "reliable physical evidence [is] seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate[.]" 468 U.S. 897, 913 (1984). The good-faith exception, the Court explained, is premised on the conclusion "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922.

*Leon* declined to go so far as to hold "that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Id.* Rather, the Court recognized that exclusion's benefits outweigh its costs—and "[s]uppression therefore remains an appropriate remedy"—when a law-enforcement officer lacks "reasonable grounds for believing that the warrant was properly issued." *Id.* at 922–23. A law-enforcement officer lacks such reasonable grounds, and the good-faith exception is inapposite, in at least four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a

"bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Rice*, 478 F.3d at 712 (quoting *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006)).

In this case, the issue is whether law-enforcement officers reasonably relied on the search warrant. Lewis argues that the application of the good-faith exception is inapposite because Detective Gatson's affidavit was a "bare bones" affidavit.[1]  "Suppression . . . remains an appropriate remedy" when "a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotations omitted).  "Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).  A bare-bones affidavit is an affidavit "that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).  Put differently, a bare-bones affidavit is "a conclusory affidavit" that "states only the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quotation omitted).

We agree with Lewis that the law-enforcement officers did not reasonably rely on Detective Gatson's affidavit because the affidavit was a bare-bones affidavit.  Although Detective Gatson's affidavit fell well short of establishing probable cause, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding[.]" *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).  Rather, the affidavit "must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Id.*  Considering the complete lack of factual information included in Detective Gatson's affidavit, we hold that

---

[1]Lewis also argues that the other three situations in which the good-faith exception is inapposite are present here.  Because we agree that Detective Gatson's affidavit was a bare-bones affidavit, we decline to reach Lewis's other arguments.

no reasonable officer would rely on the affidavit to establish probable cause to believe that Lewis's electronic devices would contain evidence of a child sexual-exploitation offense or any other crime.

As discussed above, the non-boilerplate portion of Detective Gatson's affidavit begins by stating that "[a]n HSI investigation identified Edward L Lewis . . . as a person of interest." R. 24-3 (Gatson Aff. at 4) (Page ID #105). The affidavit does not explain what "HSI" stands for, why HSI considered Lewis to be a person of interest, or the significance of HSI's person-of-interest designation. Reading that initial portion of Detective Gatson's affidavit, a judge would have no factual basis upon which to conclude that Lewis may have committed any crime, let alone the specific crime of child sexual exploitation as defined by Kentucky law.

Next, the affidavit states that Lewis "consent[ed] to [a] search [of] his laptop and cell phone" and that "[d]uring [the] search it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation." *Id.* This section clearly expresses *Detective Gatson*'s belief that Lewis had committed a crime, but it does not provide a factual basis upon which a *magistrate* could independently reach that conclusion. Indeed, Detective Gatson's conclusion that "it became apparent that" Lewis had "view[ed] images of child sexual exploitation" was "a mere conclusory statement that [gave] the magistrate virtually no basis at all for making a judgment regarding probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). A magistrate could conclude that there was probable cause to search Lewis's electronic devices only by substituting Detective Gatson's evaluation of the evidence for the magistrate's own evaluation.

Lastly, the affidavit states that "[b]ased on [Detective Gatson's] knowledge, experience and training, Edward L Lewis has demonstrated a pattern of criminal activity related to child pornography, and there is a reasonable likelihood that the user treats child pornography as a valuable commodity to be retained and collected, a characteristic common to many people interested in child pornography." R. 24-3 (Gatson Aff. at 4) (Page ID #105). This final statement likewise fails to set forth any factual information. It is tantamount to a statement that "probable cause existed"—the very definition of a conclusory statement. *Williams*, 224 F.3d at 533.

Taking a step back and considering Detective Gatson's affidavit under the totality of the circumstances, "the combined boilerplate language and minimal . . . information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity." *Weaver*, 99 F.3d at 1379. By omitting the essential facts of his investigation and communicating only his bottom-line conclusion, Detective Gatson asked the magistrate to find probable cause based solely on his say-so. "No reasonable officer could have believed" under those circumstances "that the affidavit was not so lacking in indicia of probable cause as to be reliable." *Laughton*, 409 F.3d at 751.

Our conclusion is consistent with *United States v. White*. 874 F.3d 490. *White* addressed a search-warrant affidavit stating that an investigator had received information that White was selling marijuana from a residence and that the investigator had used a confidential source to purchase marijuana directly from White in the driveway outside that same residence. *Id.* at 494. Rejecting White's argument that the affidavit was a bare-bones affidavit, we contrasted the affidavit with those held to be insufficiently detailed in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964). *White*, 874 F.3d at 498–99.

"In *Nathanson*, the affiant stated under oath that 'he has cause to suspect and does believe that' liquor illegally brought into the United States 'is now deposited and contained within the premises' belonging to the defendant." *Id*. at 498 (quoting *Nathanson*, 290 U.S. at 44). And "[i]n *Aguilar*, the affiants stated that they 'received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.'" *Id.* (quoting *Aguilar*, 378 U.S. at 109). *White* explained that "[t]hese affidavits were wholly inadequate—what we would call 'bare bones' nowadays—because they presented 'a mere affirmation of suspicion and belief without any statement of adequate supporting facts.'" *Id.* (quoting *Nathanson*, 290 U.S. at 46; *Aguilar*, 378 U.S. at 113–14). By contrast, the investigator in *White* "showed his work, explaining that White engaged in a recorded drug deal on the premises, that White had a history of drug offenses, and that White had dogs inside the residence." *Id.* at 499.

The affidavit here much more closely resembles the bare-bones affidavits in *Nathanson* and *Aguilar* than the affidavit in *White*. The *White* investigator "showed his work[.]" *Id.* He stated in his affidavit that he had "received information that marijuana was being sold . . . by . . . White" at a particular address and that the investigator "initiated a controlled purchase of marijuana with the use of a confidential source" from White outside that same residence. *Id.* at 494. This information would allow a magistrate to make an independent finding that White had sold marijuana, and to infer that it was possible that additional marijuana could be found inside the home. Detective Gatson, by contrast, skipped over his work. He stated in his affidavit that he searched Lewis's laptop and cell phone and that "it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation." R. 24-3 (Gatson Aff. at 4) (Page ID #105). Nowhere did he explain the evidence that compelled him to reach that conclusion; the investigative process that was explained in *White* went left unsaid here. Like the *Nathanson* and *Aguilar* affidavits, then, Detective Gatson's affidavit was "wholly inadequate . . . because [it] presented 'a mere affirmation of suspicion and belief without any statement of adequate supporting facts.'" *White*, 874 F.3d at 498 (quoting *Nathanson*, 290 U.S. at 46; *Aguilar*, 378 U.S. at 113–14). No reasonable officer would rely on Detective Gatson's affidavit to establish probable cause to believe that Lewis's electronic devices contained evidence of child sexual exploitation.

The government suggests that "reasonable inferences" can rescue Detective Gatson's affidavit. "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *Id.* at 500. For example, *United States v. Paull* held that the good-faith exception applied where a search warrant for evidence of child pornography "relied on events that were at least thirteen months [after] the last time the accused subscribed to the suspect website." 551 F.3d 516, 522 (6th Cir. 2009) (internal quotation omitted). *Paull* reasoned that "[t]o the extent that one is persuaded that there are gaps in the evidence caused by the delay between the investigation and the search, they were filled in by [the affiant's] experience, whose familiarity with consumers of child pornographers gave her adequate reason to suspect that Paull continued to possess illegal images." *Id.* at 523.

No comparable inference can be drawn here.  The flaw in Detective Gatson's affidavit is not that it does not explicitly draw connections between information included in the affidavit or explain the inferences needed to support probable cause.  Rather, the inescapable flaw is that the affidavit does not identify a sufficient factual basis for believing that Lewis's devices contained evidence of child pornography.  *Paull* and *White* hold that a court may draw certain reasonable inferences from the information presented in a search warrant affidavit.  But neither decision suggests that a court can "infer" facts that are entirely missing from the affidavit.  Yet that is what a magistrate would have to do to save Detective Gatson's warrant:  the magistrate would have to "infer" that Detective Gatson possessed sufficient—yet undisclosed—evidence to support his conclusion that it was "apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation."  R. 24-3 (Gatson Aff. at 4) (Page ID #105).  If a court could simply presume that sufficient evidence supported a law-enforcement affiant's "suspicions, beliefs, or conclusions," no affidavit would ever be held to be bare bones.  *Weaver*, 99 F.3d at 1378.

Under these circumstances, application of the good-faith exception would be inappropriate.  The purpose of the exclusionary rule "is to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236–37 (2011).  The good-faith exception promotes that purpose by precluding suppression where the remedy would "[p]enaliz[e] the officer for the magistrate's error, rather than his own[.]"  *Leon*, 468 U.S. at 921.  Where "the officer's reliance on the magistrate's probable-cause determination" is "entirely unreasonable[,]" however, suppression promotes deterrence and the good-faith exception is inapposite  *Id.* at 922–23.  That is the case here.

Neither the laws nor the facts are complex.  A law-enforcement officer with as much training and experience as Detective Gatson—and indeed any reasonable law-enforcement officer—should know that a warrant affidavit must provide enough non-conclusory information to allow a neutral magistrate to determine whether there is probable cause.  *See Nathanson*, 290 U.S. 41; *Aguilar*, 378 U.S. 108.  And here, providing the magistrate with those facts would have been straightforward:  officers found incriminating evidence on Lewis's computer and Lewis made incriminating statements during their conversation.  Yet Detective Gatson chose not to provide that information in his affidavit.  *See* R. 24-3 (Gatson Aff. at 4) (Page ID #105); R. 35

(Hr'g Tr. at 49) (Page ID #245). As a result, law-enforcement officers searched Lewis's electronic devices based on an affidavit that any reasonable officer would have known lacked sufficient information to establish probable cause. Rejecting the application of the good-faith exception is necessary to demonstrate that Detective Gatson and the other officers had a duty to ensure that the affidavit was free of obvious constitutional defects and to underscore the costs of not discharging that duty.

For all these reasons, we conclude that the good-faith exception is inapplicable here. A search-warrant affidavit that states only the affiant's conclusory belief that a suspect committed a crime is a bare-bones affidavit that cannot establish probable cause to search and that precludes application of the good-faith exception to the exclusionary rule. Because the search warrant here was supported by only Detective Gatson's bare-bones affidavit, the warrant did not authorize law-enforcement officers to search or seize Lewis's electronic devices and the fruits of those searches must be excluded unless an exception to the Fourth Amendment's warrant requirement applies.

## B. Exceptions to the Warrant Requirement

Warrantless searches and seizures "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Thus, the evidence recovered from Lewis's electronic devices must be suppressed unless an exception to the warrant requirement permitted the search and seizure of the devices. The government invokes two exceptions: consent and the plain-view doctrine.

### 1. Consent

The government first contends that Lewis consented to the search and seizure of his electronic devices. Consent is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Lewis concedes that he consented to an initial search of his laptop and cell phone and that Detective Gatson and forensic examiner Rollins were entitled to perform that search without first securing a warrant. Lewis argues,

however, that he did not consent to the seizure or subsequent forensic examination of his electronic devices.

The district court found that Lewis consented to the initial search of his laptop and cell phone performed by Rollins at Lewis's home, but that the law-enforcement officers exceeded the scope of Lewis's consent when they seized his electronic devices and later forensically examined them. *Lewis II*, 591 F. Supp. 3d at 183–85. "The district court's determination of whether a search" or seizure "exceeded the scope of consent is a question of fact that we review for clear error." *United States v. Garrido-Santana*, 360 F.3d 565, 570 (6th Cir. 2004). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Henry*, 429 F.3d 603, 608 (6th Cir. 2005) (quoting *United States v. Oliver,* 397 F.3d 369, 374 (6th Cir. 2005)).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). To determine what a reasonable person would have understood the scope of their consent to be, we look to the "expressed object" of the search or seizure. *Id.* A reasonable person who consents to the search of his car for narcotics, for example, would understand that the law-enforcement officer could "search containers within that car which might bear drugs." *Id.*

The parties agree that Lewis consented to the initial search of his laptop and cell phone at his home. Detective Gatson specifically told Lewis that he was looking for evidence of child pornography and asked Lewis "if he would mind if someone came over and looked at . . . his devices" for that evidence. R. 35 (Hr'g Tr. at 13) (Page ID #209). Lewis did not object to Detective Gatson's request, and he then signed a consent-to-search form that authorized "a complete search of the premises, property or vehicle located at [his address] and more particularly described as Samsung Galaxy Note 9 [and] HP Pavilion Laptop[.]" R. 26-2 (Consent Form at 1) (Page ID #141). Lewis was then present as Rollins searched and generated the preview of his laptop and looked through his phone. R. 35 (Hr'g Tr. at 20–26) (Page ID

#216–22). Lewis never attempted to withdraw his consent while Rollins performed these searches or generated the preview of his laptop. *Id.* at 28 (Page ID #224). A reasonable person would have understood these events to authorize Detective Gatson and Rollins to search Lewis's laptop and cell phone for evidence of child pornography and to generate the preview of Lewis's laptop.

The government argues that Lewis also consented to the seizure and forensic examination of his electronic devices. The district court rejected the government's argument, finding that nothing in Lewis's exchange with Detective Gatson or the other law-enforcement officers would suggest to a reasonable person that Lewis had consented to anything more than the initial search of his devices. The district court's findings are consistent with Lewis's exchange with the law-enforcement officers and those officers' actions, and therefore are not clearly erroneous.

At the suppression hearing, Detective Gatson, Special Agent Minnick, and Special Agent Even testified that Detective Gatson asked Lewis something to the effect of whether he "mind[ed] if [they] look[ed]" at his devices. *Id.* at 78 (Page ID #274); *see also id.* at 15 (Page ID #211) (Detective Gatson recounting that he asked Lewis "if he would mind . . . if we could look at his devices"); *id.* at 64 (Page ID #260) (Special Agent Minnick testifying that Detective Gatson asked Lewis "for consent to search some media"). None of the law-enforcement officers testified that Lewis was asked for his consent to seize his devices or to a perform a second, more invasive search of the devices at a state forensic laboratory, or that he voluntarily consented to those actions.

Although Lewis signed a consent form that authorized "a complete search" (but not a seizure) of his "premises, property or vehicle[,]" R. 26-2 (Consent Form at 1) (Page ID #141), Detective Gatson said that he understood Lewis to be "giving consent for a forensic examiner to come out and preview devices" and not "to come out and look around" more broadly, *see* R. 35 (Hr'g Tr. at 43) (Page ID #239). Detective Gatson's stated understanding of the limited scope of Lewis's consent is consistent with the actions that he and other officers took before, during, and after the initial search of Lewis's laptop and cell phone. As just noted above, Detective Gatson asked Lewis for his consent to have Rollins come to Lewis's home and look through his laptop and cell phone, not to engage in an exhaustive examination of all of Lewis's devices or to

conduct a forensic examination of them.  R. 35 (Hr'g Tr. at 43) (Page ID #239).  After Rollins searched Lewis's laptop and cell phone, Detective Gatson told Lewis that he was placing him under arrest, that the consent search was complete, and that he would seek a search warrant for Lewis's devices.  *Id.* at 25–28 (Page ID #221–24); *see also* Appellant Reply Br. at 6 (transcribing recorded conversation).  Lewis was then transported to jail, and Detective Gatson left Lewis's home while the agents stood guard outside of it.  *Id.* at 26–29, 51–52 (Page ID #222–25, 247–48).

The district court did not clearly err in finding that Detective Gatson and the other law-enforcement officers exceeded the scope of Lewis's consent when they seized his electronic devices and forensically examined them.  As the district court observed, searches and seizures implicate different Fourth Amendment interests.  *See Horton v. California*, 496 U.S. 128, 133 (1990); *see also Soldal v. Cook County*, 506 U.S. 56, 66 (1992).  Nothing in Lewis's exchange with Detective Gatson or in the law-enforcement officers' actions would suggest to a reasonable person that Lewis had consented to the seizure of all the electronic devices in his home.  The officers did not ask for his consent to seize, and the consent form Lewis signed did not authorize a seizure.  Further, all agree that Lewis allowed Rollins to search his devices while Rollins, Lewis, and the law-enforcement officers were present in Lewis's home.  But the events recounted above demonstrate that Detective Gatson and the other officers reached the limit of Lewis's consent once they terminated the consent search, arrested Lewis, and left his home to obtain a search warrant.  Thus, Lewis's consent did not authorize the seizure and forensic examination of his devices.

### 2.  Plain View

The government invokes one other exception to the Fourth Amendment's warrant requirement:  the plain-view doctrine.  "Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).  The government argues that Detective Gatson and Rollins were entitled to seize Lewis's electronic devices and later

forensically search them after they saw incriminating file names on the laptop during the initial consent search.

The government's plain-view argument falls flat. To start, the argument is forfeited. The government did not invoke the plain-view doctrine in the district court proceedings below. *See generally* R. 26-1 (Gov't Suppression Mem.) (Page ID #131–40); R. 35 (Suppression Hr'g Tr.) (Page ID #197–281). It was not until the government filed its brief with this court that it cited the doctrine for the first time. We have made clear under similar circumstances that the government is subject to the same forfeiture rules as any other litigant. *See United States v. Russell*, 26 F.4th 371, 376 (6th Cir. 2022); *United States v. Noble*, 762 F.3d 509, 526–28 (6th Cir. 2014). Given its forfeiture, "the government must show that the forfeited error was clear and affected its substantial rights." *Russell*, 26 F.4th at 376. The government cannot do so here.

The plain-view doctrine permits certain warrantless *seizures*, not searches. *See Hopkins v. Nichols*, 37 F.4th 1110, 1118 (6th Cir. 2022). Here, the government did not uncover the evidence Lewis seeks to suppress until *after* it seized his devices and then forensically examined them at the state laboratory. *See* R. 35 (Hr'g Tr. at 23, 31, 47–48) (Page ID #219, 227, 243–44). During the suppression hearing, Detective Gatson confirmed that the evidence that formed the basis of the charges brought against Lewis were the files recovered after the electronic devices were seized and forensically examined at the state laboratory, and not the results of the preview search conducted at Lewis's home. *Id.* Thus, even if we agreed with the government that the plain-view doctrine permitted the law-enforcement officers to seize Lewis's laptop and cell phone, *cf. United States v. Herndon*, 501 F.3d 683, 686, 692–94 (6th Cir. 2007) (plain-view doctrine permitted warrantless seizure of laptop and hard drives that were later searched in greater detail pursuant to a search warrant), the officers still would need some other Fourth Amendment justification to conduct the complete forensic examination of the devices. *See Horton*, 496 U.S. at 141 & n.11 (noting that "the seizure of an object in plain view does not involve an intrusion on privacy" and that when the "item is a container . . . it may only be opened pursuant to either a search warrant . . . or one of the well-delineated exceptions to the warrant requirement."). The plain-view doctrine cannot provide that justification, and therefore the government has not shown plain error.

**III. CONCLUSION**

Lewis consented to the initial search of his laptop and cell phone performed at his home, and the law-enforcement officers' account of that search and the preview generated during the search were validly obtained and are admissible under the Fourth Amendment. All other evidence taken from Lewis's electronic devices, by contrast, was obtained through searches and seizures that were not supported by a valid warrant or a valid claim to an exception to the warrant requirement. Accordingly, we **REVERSE** the district court's order denying Lewis's motion to suppress, **VACATE** Lewis's conviction, and **REMAND** for further proceedings.